1  STEPHEN C. KENNEY (SBN 53883)
   ELIZABETH L. DOLTER (SBN 128457)
2  KENNEY & MARKOWITZ L.L.P.
   255 California Street, Suite 1300
3  San Francisco, CA  94111
   Telephone:    (415) 397-3100
4  Facsimile:    (415) 397-3170

5  Attorneys for Defendant
   SOUTHWEST AIRLINES CO.

6

7

8                    UNITED STATES DISTRICT COURT

9                    EASTERN DISTRICT OF CALIFORNIA

10               SACRAMENTO DIVISION - **ECF PROGRAM**

11

12

13
   LINDA S. BEATTIE and BRUCE C.          CASE NO.  S-03-1444 FCD PAN
14 BEATTIE,
                                          **DEFENDANT SOUTHWEST AIRLINES
15         Plaintiff,                     CO.'S MEMORANDUM OF POINTS
                                          AND AUTHORITIES IN SUPPORT
16 v.                                     OF ITS *DAUBERT* MOTION TO
                                          EXCLUDE OR LIMIT TESTIMONY
17 SOUTHWEST AIRLINES CO., and DOES       OF PLAINTIFFS' EXPERT
   1-100,                                 DIANE LAXINETA [FRE 104(a)]**
18
           Defendants.                    **DATE:    March 17, 2006
19                                        TIME:    10:00 a.m.
                                          DEPT:    Courtroom 25**
20
                                          **TRIAL DATE:    June 20, 2006**
21

22

23

24

25

26

27

28

{30170.301680 0121183.DOC}

Kenney
&
Markowitz
L.L.P.

# TABLE OF CONTENTS

**Page**

I.  INTRODUCTION ................................................................................................. 1

II.  FACTUAL BACKGROUND ................................................................................ 1

    A.  Case Summary ........................................................................................ 1

    B.  Beattie's Disclosure of Diane Laxineta as an Expert on Flight Crew
        Training and Safety ................................................................................. 2

III.  APPLICABLE LEGAL STANDARDS .............................................................. 2

IV.  DIANE LAXINETA'S QUALIFICATIONS ..................................................... 4

V.  DIANE LAXINETA'S OPINIONS AND THE BASES FOR THEIR
    EXCLUSION ........................................................................................................ 6

    A.  Laxineta's Opinions on Legal Standards Usurp the Court's Role in
        Instructing the Jury About the Applicable Law ..................................... 6

    B.  Laxineta's Opinion on Lack of Training is Not Based on Sufficient
        Facts or Data .......................................................................................... 6

    C.  Laxineta's Opinion About Southwest's Post Accident Reporting
        Procedures is Irrelevant ......................................................................... 8

    D.  Laxineta's Opinion That Southwest Personnel  Should Have
        Intercepted an "Oversized Bag" is  Speculative and Based on
        Erroneous Assumptions ......................................................................... 8

    E.  Laxineta's Opinions That Flight Attendant Kane "Caused the
        Accident" Are Not Helpful to the Jury; the Jury is Capable of
        Drawing Inferences from the Evidence ............................................... 10

    F.  Even if Laxineta's Opinions Are Deemed Relevant and Reliable,
        They Should Be Excluded Under FRE 403 ......................................... 13

VI.  LAXINETA SHOULD NOT BE ALLOWED TO TESTIFY ABOUT HER
    ATTEMPT TO RECONSTRUCT THE APRIL 2, 2002, INCIDENT ......................... 14

VII.  IF LAXINETA IS ALLOWED TO TESTIFY, HER TESTIMONY ON
    DIRECT EXAMINATION SHOULD BE LIMITED TO THOSE OPINIONS
    IN HER RULE 26 REPORT WHICH SATISFY THE
    *DAUBERT/KUMHO/JOINER* STANDARDS ........................................................ 15

VIII.  CONCLUSION ................................................................................................. 17

Kenney
&
Markowitz
L.L.P.

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Andrews v. Metro North Commuter RR*
    882 F.2d 705 (2d Cir. 1989)..................................................................4, 13

*Atmel Corporation v. Information Storage Devices, Inc.*
    189 F.R.D. 410 (N.D. Cal. 1999)............................................................5, 15

*Beech Aircraft Corp. v. United States*
    51 F.3d 834 (9th Cir. 1995).......................................................................3

*Bourjaily v. United States*
    483 U.S. 171 (1987) ..................................................................................3

*Burkhart v. Washington Metro Area Transit Auth.*
    112 F.3d 1207 (D.C. Cir. 1997) ................................................................6

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
    509 U.S. 579 (1993)..........................................................................passim

*General Electric v. Joiner*
    522 U.S. 136 (1997).....................................................................8, 16, 17

*Guidroz-Brault v. Missouri Pacific Railroad Company*
    254 F.3d 825 (9th Cir. 2001) ...................................................................10

*In re Canvas Specialty, Inc.*
    261 B.R. 12 (C.D. Cal. 2001)....................................................................3

*In Re Silicone Gel Breast Implants Products Liab. Litigation*
    318 F.Supp.2d 879 (C.D. Cal. 2004) .......................................................4, 5

*Jinro America, Inc. v. Secure Investments, Inc.*
    266 F.3d 993 (9th Cir. 2001).............................................................3, 13, 14

*Kumho Tire Co., Ltd. v. Carmichael*
    526 U.S. 137 (1999) ............................................................2, 3, 16, 17

*Loeb v. Hammond*
    407 F.2d 779 (7th Cir. 1969).....................................................................4

*Mukhtar v. California State University, Hayward*
    299 F.3d 1053 (9th Cir. 2002)..............................................................passim

*United States v. Barnard*
    490 F.2d 907 (9th Cir. 1973)......................................................................3

*United States v. Candoli*
    870 F.2d 496 (9th Cir. 1989)..................................................................3, 12

Kenney
&
Markowitz
L.L.P.

*United States v. Chang*
    207 F.3d 1169 (9th Cir. 2000)...................................................................................... 3

*United States v. Duncan*
    42 F.3d 97 (2nd Cir. 1994) ......................................................................................... 13

*United States v. Finley*
    301 F.3d 1000 (9th Cir. 2002)...................................................................................... 12

**Statutes**

Federal Rule Civ. Proc. 26(a)(2)(B) ................................................................................ 15

Federal Rule Civ. Proc. 37(c)(1) ..................................................................................... 15

Federal Rule Evid. 104(a) ................................................................................................. 2

Federal Rule Evid. 403 ............................................................................................. 1, 13, 14

Federal Rule Evid. 702 .......................................................................................... 3, 12, 15, 17

{30170.301680 0121183.DOC}                                    -iii-
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SOUTHWEST'S
*DAUBERT* MOTION RE DIANE LAXINETA
S-03-1444 FCD PAN

Kenney
&
Markowitz
L.L.P.

## I.    INTRODUCTION

The Beattie plaintiffs intend to offer the opinion testimony of Diane Laxineta ("Laxineta") on a number of issues regarding causation and fault in this matter.  In this motion, Southwest will show that Laxineta's experience will not allow her to qualify as an expert on any of the opinions which will be proferred.  Should Laxineta survive this threshold challenge, it will then be shown that each of her stated opinions are subject to fundamental flaws which preclude their admission.  Specifically, it will be shown that Laxineta offers opinions on questions of law and fact which invade the province of the Court and jury, that her testimony on credibility invades the function of the jury as the trier of fact and that her testimony is not "helpful" in that it does not involve difficult technical issues which should be beyond a jury's common sense analysis.  Finally, it will be shown that Laxineta's speculative opinions are inadmissible under FRE 403 because their probative value is outweighed by their prejudicial effect.

## II.    FACTUAL BACKGROUND

### A.    Case Summary

This lawsuit arises out of an April 2, 2002 incident on Southwest Flight 794.  Plaintiff Linda Beattie ("Beattie"), was a passenger on Flight 794 en route to a work-related conference with several of her colleagues at the State of California Employment Development Department ("EDD").  Before takeoff, a laptop computer bag allegedly fell from the overhead bin above Beattie and hit her on the head.  Beattie contends that Southwest flight attendant Andrew Kane ("Kane") negligently caused the computer bag to fall from the bin while he was rearranging luggage in the bin in order to find room for a "late boarding" passenger's "oversized" bag.  Beattie's husband, Bruce Beattie, asserts a claim for loss of consortium against Southwest.

Southwest contends that neither Kane nor its other flight attendants caused the computer bag to fall, and that there was no evidence that an "oversized bag," i.e., a bag exceeding the size limitations for carry on luggage, was brought on board Flight 794 by a so-called late boarding passenger.  Passenger Jason Gleim, who witnessed the incident, wrote a note during Flight 794, which he gave to Kane during the flight.  The note stated that Southwest was not at fault and that Gleim saw the bag fall when another passenger "tried turning" a bag.  Exhibit F to Dolter Dec.

Kenney
&
Markowitz
L.L.P.

1    Lynette Blumhardt, an acquaintance of Beattie's who also happened to be a passenger on

2    Flight 794, saw the computer bag fall when an unidentified male passenger opened the bin over

3    Beattie's aisle seat. Blumhardt Depo. [Exhibit E to Dolter Dec.] at 10:11-11:2; 23:15-24:6; 25:5-

4    17; 27:7-24; 51:4-7.

5         **B.    Beattie's Disclosure of Diane Laxineta as an Expert
               on Flight Crew Training and Safety**

6         On September 15, 2004, the Beatties disclosed Diane Laxineta ("Laxineta") as their expert

7    on "flight crew training and safety, including but not limited to the proper storage of luggage and

8    overhead bins ...." Laxineta's Rule 26 report was belatedly produced on December 29, 2004.

9    Exhibit B to Dolter Dec. During Laxineta's March 31, 2005 deposition, Laxineta testified to six

10   opinions, most of which were new opinions not contained in her Rule 26 report. Laxineta Depo.

11   at 74:18-75:10; 91:5-7; 104:7-105:6; 139:17-23; 143:5-10; 143:25-144:6; 144:11-17 [Exh. G to

12   Dolter Dec.]; Laxineta's Deposition Notes [Exh. D to Dolter Dec.].

13        **III.    APPLICABLE LEGAL STANDARDS**

14        The admissibility of expert opinions is fundamentally governed by FRE 702.

15              If scientific, technical or other specialized knowledge will
16        assist the trier of fact to understand the evidence or to determine a fact
          in issue, a witness qualified as an expert by knowledge, skill,
17        experience, training, or education, may testify thereto in the form of
          an opinion or otherwise, if (1) the testimony is based upon sufficient
18        facts or data, (2) the testimony is the product of reliable principles and
          methods, and (3) the witness has applied the principles and methods
19        reliably to the facts of the case.

20        Thus, an expert such as Laxineta must be possessed of "technical" or "specialized"

21   knowledge which will assist the jury in determining difficult questions which are beyond the

22   realm of common knowledge. Pursuant to the holdings in *Daubert v. Merrell Dow*

23   *Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) and *Kumho Tire Co., Ltd. v. Carmichael*, 526 U.S.

24   137 (1999), the trial court acts as the "gatekeeper" in determining whether an expert opinion is

25   based on sufficient facts, reliable principles and proper application. Deficiencies in a witness'

26   qualifications or opinions are subject to challenge in a preliminary proceeding conducted pursuant

27   to FRE 104(a).

28

Kenney
&
Markowitz
L.L.P.

(a)   Questions of admissibility generally. – Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provision of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

Rule 104(a) requires a trial judge to determine whether the witness is proposing to testify to (1) an area of expertise, (2) that will assist the trier of fact to understand or determine a fact in issue. *In re Canvas Specialty, Inc.*, 261 B.R. 12, 18 (C.D. Cal. 2001). The proponent of the expert testimony has the burden of proving by a preponderance of the evidence that the admissibility requirements are met. *Bourjaily v. United States*, 483 U.S. 171, 175-76 (1987).

District courts must scrutinize whether the principles and methods employed by the expert have been properly applied to the facts of the case. *Kumho,* 526 U.S. at 157. "[T]he trial judge in all cases of proffered expert testimony must find that it is properly grounded, well-reasoned, and not speculative before it can be admitted." FRE 702 Advisory Committee Notes.

The decisional law establishes numerous principles which bear on the present analysis.

- An expert must be qualified to render an opinion based on knowledge, skill, experience, training or education. *United States v. Chang*, 207 F.3d 1169, 1172 (9th Cir. 2000). Testimony from an unqualified expert will be excluded. *Jinro America, Inc. v. Secure Investments, Inc.,* 266 F.3d 993 (9th Cir. 2001).

- The expert's qualifications must relate to the issues before the court. *United States v. Chang*, 207 F.3d at 1173.

- Expert testimony is not required and is excluded where an understanding of the subject is a matter of common knowledge and common sense. *Beech Aircraft Corp. v. United States*, 51 F.3d 834, 842 (9th Cir. 1995).

- Expert testimony which merely tells the jury the result it should reach improperly invades the province of the finder of fact. *Mukhtar v. California State University, Hayward,* 299 F.3d 1053, 1066 n. 10 (9th Cir. 2002).

- An expert may not opine on the credibility of witnesses. *United States v. Barnard*, 490 F.2d 907, 912 (9th Cir. 1973); *United States v. Candoli*, 870 F.2d 496, 506 (9th Cir. 1989).

Kenney
&
Markowitz
L.L.P.

{30170.301680 0121183.DOC}                    -3-

- An expert may not opine on the negligence of a party in a tort case. *Andrews v. Metro North Commuter RR*, 882 F.2d 705, 708-709 (2d Cir. 1989).

- An expert may not offer an opinion on legal issues since this interferes with the court's function in instructing the jury. *Loeb v. Hammond*, 407 F.2d 779, 781 (7th Cir. 1969); *Mukhtar v. California State University, Hayward*, 299 F.3d at 1066, no. 10.

- Any step that renders the expert's analysis unreliable renders the expert's testimony inadmissible. *In Re Silicone Gel Breast Implants Products Liab. Litigation*, 318 F.Supp.2d 879, 890 (C.D. Cal. 2004).

## IV.   DIANE LAXINETA'S QUALIFICATIONS

Voir Dire will confirm that Laxineta commenced her career in the airline industry when she was hired as a flight attendant by Pan American in 1970. Laxineta Depo. [Exhibit G to Dolter Dec.] at 55:5-18. She remained in that position until 1972 when she became a supervisor for the training and development of flight attendants. Laxineta Depo. at 55:5-18. Thereafter, she was steadily promoted to administrative positions of increasing responsibility which involved employment issues, scheduling, budgeting, public relations, aircraft evaluation and supervision of independent contractors. From November of 1985 until May of 1998, Laxineta was the General Manager of Pan American's Los Angeles operations with wide ranging responsibilities for top level administration. Exhibit C to Dolter Dec.

In May of 1998, Laxineta left the employment of Pan American and since that time has been the owner/operator of Customer Service Consulting. Laxineta Depo. at 15:8-13. Since that time, she has provided management consulting services for municipal airports and media organizations. Laxineta Depo. at 17:7-14; 19:7-21. Within the last four years, she has ceased consulting operations, has become semi-retired and now works only as an expert witness. Laxineta Depo. at 16:14-18.

By any standard, Laxineta's resume and her experiences present an impressive picture of accomplishment – she has risen from an entry level position to top echelon policy-making positions. However, for present purposes, it is also clear that she has long since been promoted

Kenney & Markowitz L.L.P.

{30170.301680 0121183.DOC}     -4-
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SOUTHWEST'S
*DAUBERT* MOTION RE DIANE LAXINETA
S-03-1444 FCD PAN

1    away from the subject matter on which she has been requested to offer opinions – the day-to-day

2    operations of a flight crew in dealing with the stowage of carry-on luggage.

3    Specifically, she has not herself served as a flight attendant since 1972 and ceased any

4    connection with an airline in 1988. Laxineta Depo. at 55:5-18. In the intervening 17 years, she

5    has had no training in flight attendant standards, has attended no courses and has reviewed no

6    industry publications.[1] Laxineta Depo. at 40:24-41:10; 46:17-48:23; 49:22-51:3; 54:1-11. Her

7    only means of keeping current on issues relevant to flight attendant operations is the occasional

8    lunch with former colleagues. Laxineta Depo. at 51:9-53:9. She has never testified as an expert

9    on flight attendant training and safety. Laxineta Depo. at 35:4-36:21.

10   As noted above, an expert must be qualified by knowledge, skill, experience or training.

11   At one time, Laxineta had an involvement with flight attendant operations which might have been

12   pertinent. However, that has become attenuated with the passage of time and it is submitted that

13   she has become too far removed to provide helpful testimony for a trier of fact. See *Atmel*

14   *Corporation v. Information Storage Devices, Inc.*, 189 F.R.D. 410, 416 (N.D.Cal.1999)

15   ["unrefreshed recollection of one person, even if he was once knowledgeable, could not alone be

16   the basis for an expert's opinion as to the general knowledge of an entire community almost a

17   decade ago"].

18   Laxineta has no foundational knowledge about what standard practices existed in the

19   airline industry with regard to stowage of luggage on the date of the April 2, 2002, laptop bag

20   incident, and is thus not qualified to opine on the conduct of the Southwest flight attendants in this

21   case. *In re Silicone Gel Breast Implants Products Liab. Litigation*, 318 F.Supp.2d at 902 [expert

22   not qualified to opine on breach of duty of care when he had no foundational knowledge of

23   standard industry practices]. Laxineta's recollection of her experience as a flight attendant over

24   twenty years ago, compounded with her lack of knowledge of Southwest's training/in-flight

25   standards and the airline industry's standards for stowage of luggage in April 2002, is not a

26   reliable basis for her expert testimony in this case.

Kenney
&
Markowitz
L.L.P.

27   [1]   This chronological separation is particularly significant since the duties of flight attendants
28   shifted significantly after September 11, 2001. Laxineta has no knowledge of post-9/11 security
     procedures. Laxineta Depo. at 54:12-25.

## V.   DIANE LAXINETA'S OPINIONS AND
## THE BASES FOR THEIR EXCLUSION

Laxineta's opinions stated in her deposition will be block quoted and followed by an analysis of the bases for exclusion.  These opinions are contained in Laxineta's Deposition Notes, and were addressed at her March 31, 2005, deposition.[2]

### A.   Laxineta's Opinions on Legal Standards Usurp the Court's Role in Instructing the Jury About the Applicable Law

Laxineta's first two opinions are:

– Flight attendant crew is primarily responsible for the safety of the passengers on their flight.

– Many airline rules and regulations are designed for the safety of the passenger.

Laxineta is attempting to testify on legal standards and conclusions.  She thus usurps the role of the court in advising the jury of the governing legal principles.  *Burkhart v. Washington Metro Area Transit Auth.*, 112 F.3d 1207, 1212 (D.C. Cir. 1997).

### B.   Laxineta's Opinion on Lack of Training is Not Based on Sufficient Facts or Data

Laxineta's third opinion is:

– Training has to be adequate to prevent this kind of accident from happening.

There is no evidence regarding a lack of training and thus no relationship to the facts of the case and no reliability.  Laxineta testified that she has no idea what Southwest's training consists of, whether Southwest's training is deficient or how many accidents occur of this nature, i.e., luggage falling from overhead bins:

Q.   Do you have any knowledge of the types of training that are incorporated as part of the Southwest regular or recurrent training of flight attendants?

A.   No, I didn't.  Sorry.  I didn't mean to cut you off.

Q.   That's okay.

A.   Only the things that were referred to by the flight attendants in their depositions.

---

[2]  Laxineta's Deposition Notes are attached as Exhibit D to the Declaration of Elizabeth L. Dolter (Dolter Dec.)  Laxineta's opinions are stated on Pages 2 and 3 of those Notes.

Kenney
&
Markowitz
L.L.P.

1    Q.    Okay.

2    A.    As well as the flight attendant manual referenced in occasional places in training, <u>but I have no knowledge of their initial or recurrent training.</u>

3

4    Q.    Okay.  Do you consider bags falling out of overhead bins a chronic problem with Southwest Airlines?

5    A.    <u>I have no information to support that.</u>

6                                          * * *

7    Q.    Okay.   Let's talk specifically about bags falling out of overhead bins.

8

9    A.    Right.

10   Q.    You haven't seen any testimony or – well, let's focus on that. There is no testimony, evidence in this case that overhead – bags falling out of overhead bins is a chronic problem; is that --

11

12   A.    That's correct.

13   Q.    Would you agree with that?

14   A.    I would.

15   Q.    Can you restate the third opinion, I think it was training has to be adequate to prevent this --

16

17   A.    Kind of accident from happening.

18   Q.    Okay.  <u>Do you have an opinion that there is insufficient training at Southwest Airlines generally speaking with regard to preventing bags from falling out of overhead bins?</u>

19

20   A.    <u>I have no evidence.</u>

21   Q.    Do you have an opinion on it?

22   A.    <u>I have an opinion that having been with an airline for 18 years that flight attendants get very busy during the course of their activities and sometimes they get rushed and hurried, and that occasionally the passenger or the flight attendant may cause baggage to fall out of the overhead bin.</u>

23

24

25   Q.    Okay.  <u>Do you have an opinion that Southwest has problems with this particular situation where bags are falling out of overhead bins?</u>

26

27   A.    <u>No.</u>

28   Q.    No evidence, you haven't seen any evidence of that?

Kenney
&
Markowitz
L.L.P.

A.     No.

(Laxineta Depo. at 92:6-23; 94:1-95:11; emphasis added.)

This is an opinion in a factual vacuum.  "Nothing in either *Daubert* or the Federal Rules of Evidence requires a district court to admit opinion evidence that is connected to existing data only by the *ipse dixit* of the expert."  *General Electric v. Joiner*, 522 U.S. 136, 146 (1997).  A trial court may exclude evidence where it finds that "there is simply too great an analytical gap between the data and opinion offered."  *Id.*

### C.     Laxineta's Opinion About Southwest's Post Accident Reporting Procedures is Irrelevant

Laxineta's fourth opinion is:

> – The flight attendants did not follow SWA's regulations by getting an account of the incident and attempting to provide 3 witnesses to the accident as they are required to do in the Flight Attendant Manual.

This opinion is simply irrelevant.  There is no connection between post accident reporting procedures and the prevention or causation of an accident in the first instance.  Phrased differently, as Laxineta conceded, plaintiff Linda Beattie's alleged injuries were not caused by an alleged failure to fill out an accident report.  (Laxineta Depo. at 114:11-115:15.)  "Expert testimony which does not relate to an issue in the case is not relevant and, ergo, not helpful."  *Daubert*, 509 U.S. at 591.

Further, this opinion ignores two facts -- that Southwest flight attendant Kane obtained a handwritten note from passenger Jason Gleim stating that Southwest was not at fault because the bag fell when another passenger tried "turning the bag that fell on that lady," and that flight attendant Kane prepared a contemporaneous in-flight report about the incident.  Kane Depo. at 39:13-40:16; 40:23-41:21; 52:1-9; Gleim Note and Kane In-Flight Report [Exhibit F to Dolter Dec.].

### D.     Laxineta's Opinion That Southwest Personnel Should Have Intercepted an "Oversized Bag" is Speculative and Based on Erroneous Assumptions

Laxineta's final two opinions are:

> – The customer Service Agents responsible for Flt. 794 did not take the late boarding passenger's oversized bag away before she entered the aircraft which could have prevented the accident.

Kenney
&
Markowitz
L.L.P.

– Mr. Kane, the "A" flight attendant, did not stop the late boarding passenger with an oversized bag and did not take her bag away in order to check it. The "A" flight attendant position is required to check oversized bags at the front door.

These two opinions are not reliable and are not properly related to the facts of the case. There is no evidence of an "oversized" bag brought on board by a late boarding passenger. Laxineta believes her opinion that a passenger boarded the flight with an oversized bag is supported by deposition testimony from Beattie and her EDD co-worker Sue Bristow:

Q.   Your conclusion or opinion that this was an oversized bag is based on the description provided by Sue Bristow?

A.   No, it's based on the description by Linda Beattie.

Q.   I'm sorry, it is Linda Beattie herself?

A.   Linda Beattie described the bag as an oversized bag. She made the comment that when the late-boarding passenger was coming on, how did she – her thought process was how did she get onboard with a bag that's bigger than mine that I checked.

Q.   Okay. Besides that – okay. Earlier I thought you said that you relied on both Bristow and the plaintiff to come to the conclusion that this was an oversized bag?

A.   That's correct.

Q.   So you do rely in part on Bristow?

A.   I do, but it isn't as conclusive as Ms. Beattie's.

(Laxineta Depo. at 126:5-23.)

However, Laxineta then conceded that none of the witnesses "oversized" to describe the bag:

Q.   Okay. Did any of these witnesses testify that the passenger that came on to try and load the bag in the overhead bin, that that bag was actually oversized?

A.   Only the passenger witness that I mentioned, Ms. Bristow, and I think I spoke earlier to the fact that she described the bag as one being a folding bag for clothing or whatever, that her description reminded me of my bag which is too big for the overhead.

Q.   But she didn't actually use the term oversized bag?

Kenney
&
Markowitz
L.L.P.

A.    I don't believe she did.

Q.    Do you know of any other witnesses that did use the term
oversized bag?

A.    No, I don't.

(Laxineta Depo. at 125:14-126:4; emphasis added.)

Laxineta made a leap of faith to conclude that there was an oversized bag.  There is no reliable basis for Laxineta's assumption, given her concession that no witness used the word "oversized" to describe the "late boarding" passenger's bag.   An expert opinion based on speculative assumptions is not reliable.  *Guidroz-Brault v. Missouri Pacific Railroad Company*, 254 F.3d 825, 830-31 (9th Cir. 2001).

**E.    Laxineta's Opinions That Flight Attendant Kane "Caused
the Accident" Are Not Helpful to the Jury; the Jury is
Capable of Drawing Inferences from the Evidence**

Laxineta's final opinions expressed at her deposition are:

– Mr. Kane was observed moving the late boarding passenger's bag
and other passenger items around in a full overhead bin by several
witnesses.

– Mr. Kane did not carefully handle the items in the overhead bin to
make sure that nothing would fall out.

– Mr. Kane's actions of moving the late boarding passenger's bag and
other luggage in the overhead bin caused the laptop to be placed in a
precarious position in the bin and it subsequently fell out.   He
therefore caused the accident.

These three opinions are all based on the simple proposition that objects do not fall out of overhead bins which have been properly stowed.  This is not a subject matter which requires the special skill, knowledge, expertise training or experience.   Instead, the issue can safely be submitted to the jury's common sense and experience.  *Mukhtar v. California State University Hayward*, 299 F.3d 1053, n.9 [when a jury is capable of drawing its own inferences from the evidence, expert opinion is not of assistance].

Quite apart from this, there is a vigorous factual dispute regarding Kane's participation in the stowage process.  There is competent testimony that a passenger was directly involved in the stowage process and that no Southwest employee played a role in the incident.  In reaching her opinion, Laxineta has not elected to believe one version of the events.

Kenney
&
Markowitz
L.L.P.

1

Q.  Sure.  Do you have an opinion as to whether Lynette Blumhardt's description of the facts was accurate?

2

A.  Well, I think she thought it was accurate.

3

Q.  Okay.  But given your role as an expert in this case, you have expressed an opinion that Andrew Kane was in the area and forced the bag to fall out?

4

5

A.  Right.

6

Q.  And hit Linda Beattie; correct?

7

A   Mm-hm.

8

Q.  In order to reach that opinion, you had to have discounted or not gave too much credence to Lynette Blumhardt's opinion, or fact version; is that correct?

9

10

A.  That is correct.

11

                              * * *

12

Q.  Assuming no flight attendant, Andrew Kane or anything else, had been to that overhead bin yet, had not tried to force any bags in or out and Lynette Blumhardt's testimony were correct that a male passenger boarded, opened the overhead bin door and a bag falls out and strikes Linda Beattie; under that set of circumstances that could not be the responsibility of the flight attendants, could it?

13

14

15

16

A.  That is correct.

17

MR. HELLER:  Belatedly the same objection.

18

MR. CISNEROS:  Okay.

19

Q.  So in fact if Lynette Blumhardt's version of the facts is correct, your opinion would be incorrect in this case about Mr. Kane being responsible?

20

21

A.  Yes.

22

                              * * *

23

Q.  And what's the basis on which you rely to discount her testimony?

24

25

A.  Well, there's several things.  First of all, as I mentioned before, the trend, and the trend was toward a male at that time. The second thing is my experience when I was with Pan Am investigating these various incidents that people's recollections got confused, and that sometimes they could be confusing one flight with another flight, and by most of the – or some of the testimony of the witnesses, they did travel on a fairly frequent basis which, you know, since they didn't write

26

27

28

Kenney
&
Markowitz
L.L.P.

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SOUTHWEST'S
*DAUBERT* MOTION RE DIANE LAXINETA
S-03-1444 FCD PAN

1    anything down it was difficult for them to actually go back to
     a specific recollection. And I think that's what happened to
2    Lynette Blumhardt.

3                                    * * *

4    Q.    Okay. Now, with regard to the in-flight and provisioning
           report of Mr. Kane, you would also have to discount this
5          particular report in order to reach your opinion; correct?

6    A.    I would.

7    (Laxineta Depo. at 133:17-134:21; 139:2-16; 158:12-16; emphasis
     added.)

8    Laxineta explained that because the "theme" of the witnesses' deposition testimony placed

9    Kane around the overhead bin from which the laptop bag fell, the most plausible scenario is that

10   Kane's actions caused the laptop bag to fall from the overhead bin and hit Beattie.

11   Q.    Okay. There were discrepancies in some of these other
           witness' testimonies about whether this was a male or a
12         female flight attendant; correct?

13   A.    In some of them, yes.

14   Q.    Okay. And is that discrepancy important to you?

15   A.    <u>Well, if there hadn't been such a consistent theme I would
           have probably given that more weight.</u> But when you take
16         people's depositions two years later and you have very little
           documentation such as the in-flight provisioning report to
17         stand on it own, <u>I went with what I felt was the consistent
           version as described by many of the witnesses</u>. And the
18         witnesses that I base my opinion on seem fairly sure that it
           was Mr. – it was a male flight attendant, and that he was
19         moving the bag and as a result of that action the laptop fell
           out.
20

21   (Laxineta Depo. at 131:20-132:11; emphasis added.)

22   Laxineta's opinions about which witnesses are truthful invade the jury's exclusive function

23   to make credibility determinations. *United States v. Candoli*, 870 F.2d at 506 [expert may not

24   testify as to a witness' credibility or "testify in such to a manner as to improperly buttress a

25   witness' credibility"]; *United States v. Finley*, 301 F.3d 1000, 1009 (9th Cir. 2002) [noting that

26   expert who was merely "reciting the allegation of an alleged victim 'in the guise of medical

27   opinion'" "does nothing but vouch for the credibility of another witness ... and therefore does not

28   assist the trier of fact as required by Rule 702"].

Kenney
&
Markowitz
L.L.P.

Regarding Laxineta's opinion that Kane was "responsible" for the accident, Laxineta is offering a legal conclusion. An expert cannot give an opinion as to her legal conclusion, i.e., an opinion on an ultimate issue of law. *Mukhtar*, 299 F.3d at 1066, n. 10 ["when an expert undertakes to tell the jury what result to reach, this does not *aid* the jury in making a decision, but rather attempts to substitute the expert's judgment for the jury" (quoting *United States v. Duncan*, 42 F.3d 97, 101 (2nd Cir. 1994)).]

Laxineta's approach is not "helpful," does not bear the necessary relationship to the facts, encompasses prohibited conclusions on credibility, and invades the jury's fact-finding functions. Laxineta is not empowered to direct a verdict in this matter.

**F.      Even if Laxineta's Opinions Are Deemed Relevant
        and Reliable, They Should Be Excluded Under FRE 403**

In *Daubert*, the Supreme Court explained that the judge's role in conducting the Rule 403 balancing test with regard to expert testimony:

> Rule 403 permits the exclusion of relevant evidence "if its probative value is substantially outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury....." Judge Weinstein has explained: "Expert evidence can be both powerful and quite misleading because of the difficulty in evaluating it. Because of this risk, the judge in weighing possible prejudice against probative force under Rule 403 ... .exercises more control over experts than lay witnesses.
>
> *Daubert*, 509 U.S. at 595, quoting 138 F.R.D. 631, 672 (1991). (Emphasis added.)

An expert's opinion that a party acted negligently is unfairly prejudicial to that party. *Andrews v. Metro North Commuter R.R. Co.*, 882 F.2d at 709. Plainly, Laxineta's statements that Kane is "responsible" or that he "caused" the bag to fall are unfairly prejudicial. Laxineta's truisms that flight attendants are responsible for passengers' safety are likewise more prejudicial than probative because they suggest that a strict liability standard is applicable in this negligence case.

*Jinro America, Inc. v. Secured Investments, Inc.*, is also instructive on the issue of the circumstances under which otherwise admissible expert testimony should be excluded under FRE

Kenney
&
Markowitz
L.L.P.

403.   In *Jinro,* the district court allowed an expert on business practices to testify that in his experience, generally Korean businessmen were not to be trusted.   The expert did not cite any research or study or any empirical data and made only "generalized, anecdotal references to his personal experience."   266 F.3d at 1004.   The Ninth Circuit held that the expert's testimony was not reliable, and in any event it was unduly prejudicial and should have been excluded under Rule 403.   On the reliability issue, the Ninth Circuit held that the expert's pronouncements about Korean businesses based largely on his personal investigative experiences were hardly an adequate foundation for expert opinion . Id. at 1006.

The Ninth Circuit also held that the expert's sweeping generalizations about the Korean business community were unfairly prejudicial.   The Court explained that the expert engaged in an impermissible syllogism:   (a) Korean businesses generally are corrupt;   (b) Jinro is a Korean business; (c) therefore, Jinro is corrupt.   266 F.3d at 1007.

Although *Jinro* dealt with expert testimony that was tantamount to ethnic or cultural stereotyping, its reasoning is applicable to the present case.   Here, Laxineta's opinions are based on her personal experiences while a flight attendant almost 30 years ago, and her impression of a general trend of witness' recollections about in-flight incidents.   Like the expert in *Jinro,* Laxineta is offering an impermissible syllogism: (a) in Laxineta's experience, the trend of the witnesses' accounts are generally the correct accounts of an incident; (b) the "trend" of the witnesses in this case places flight attendant Kane in the vicinity of the overhead bin from which the laptop bag fell; (c) therefore, Kane's actions caused the laptop bag to fall out of the bin.   Laxineta Depo. at 115:5-117:1; 131:20-132:11; 134:2-21.

As the Ninth Circuit noted in *Jinro,* permitting an expert whose statements "are likely to carry special weight with the jury" to testify about such gross generalizations would be unfairly prejudicial to Southwest.

## VI.   LAXINETA SHOULD NOT BE ALLOWED TO TESTIFY ABOUT HER ATTEMPT TO RECONSTRUCT THE APRIL 2, 2002, INCIDENT

Laxineta testified that on her way to her deposition she traveled on a Southwest flight.   She sat in Row 7D (two rows behind  Linda Beattie's seat on April 2, 2002, 5D) in an attempt to see

Kenney
&
Markowitz
L.L.P.

how much of the overhead bin space she could view and whether she could hear any passengers talking in the two rows ahead of her. Laxineta Depo. at 118:9-119:12; 120:5-9; 120:18-121:11; 121:22-123:7. Laxineta conceded that she did not attempt to recreate the conditions of the April 2, 2002, incident. Laxineta Depo. at 120:5-13. She is not an expert on accident reconstruction. Laxineta Depo. at 148:6-15. Rule 702 does not allow an expert to testify on opinions based on such ad hoc, imprecise and non-specific make-shift "experiments."

## VII.   IF LAXINETA IS ALLOWED TO TESTIFY, HER TESTIMONY ON DIRECT EXAMINATION SHOULD BE LIMITED TO THOSE OPINIONS IN HER RULE 26 REPORT WHICH SATISFY THE *DAUBERT/KUMHO/JOINER* STANDARDS

In *Atmel Corp. v. Information Storage Device, Inc.*, the Court explained that FRCP 26(a)(2)(B) and 37(c)(1) "allow an expert, on direct examination, to rely on no more than he disclosed in his Rule 26(a)(2)(B) report." 189 F.R.D. at 416. An expert may not testify on direct examination on matters deliberately ignored in his Rule 26(a)(2)(B) report. *Id.*

Here, Laxineta has issued only one Rule 26(a)(2)(B) report which contains the following opinions:

> At this juncture, there appear to be two conflicting versions of what transpired next. My understanding is that after the woman with the oversized bag couldn't get her bag into the overhead compartment, she left the bag for a flight attendant to handle. As a result, Mr. Kane who was the "A" flight attendant and assigned to the area where she tried to get her bag into the overhead bin tried to place her bag in the overhead bin. There were not reports that Mr. Kane, prior to trying to get her bag into the overhead bin, made any attempt to see what else was in the inside of the overhead bin that might impede the process or become a safety hazard to any of the passengers sitting below. The result was that a laptop fell out of the overhead bin onto Mrs. Beattie's head. If this account is accepted then it appears that responsibility for the accident rests with Mr. Kane.

> Mr. Kane was the "A" flight attendant, and his duties require that he greet the passengers during boarding at the front aircraft door or from the front galley. Part of his responsibilities during boarding as the "A" flight attendant includes that he monitor the boarding passengers for heavy and/or oversized carryon luggage; in this case, he should have intercepted the oversized bag that the woman was attempting to bring on board as carryon luggage before she had the opportunity to try to stow it herself. Per procedure, he should have taken the bag from her, tagged it and given it to the ground personnel to load in the belly of the aircraft. This would have avoided the situation that occurred. One of the flight attendants should have observed the passenger struggling with her bag and assisted her in order to avoid

Kenney
&
Markowitz
L.L.P.

the accident.  As an aside, it also appears that <u>Southwest staff should</u>
<u>have stopped the passenger as she attempted to board the plane with</u>
<u>her oversized bag.</u>  Either action would have avoided the accident.
(Exhibit B to Dolter Dec.)  (Emphasis added.)

Laxineta did not prepare a supplemental Rule 26 report before her March 31, 2005,

deposition, even though non-expert discovery had closed by that date.  She has not submitted any

supplemental report since her March 31, 2005, deposition.  Dolter Dec., ¶4.

If the Court allows Laxineta to testify, Southwest requests that Laxineta be constrained on

direct examination to those opinions, if any, contained in her December 29, 2004, Rule 26 report

which satisfy the *Daubert/Kumho/Joiner* standards of relevance and reliability.

These opinions can be summarized as (1) Kane is responsible for the accident if one of two

conflicting versions is believed; and (2) either Southwest ground crew or Kane should have

intercepted an oversized bag.  Southwest submits that the opinions in Laxineta's Rule 26 report are

neither relevant nor reliable, and that they are unduly prejudicial.

As stated above, the opinion that Kane is at fault is an opinion that concerns matters within

the common knowledge of the jury.  This opinion is therefore not helpful to the jury under Ninth

Circuit precedent.  Laxineta is telling the jury what result to reach.  *Mukhtar,* 299 F.3d at 1065, n.

9 and 1066, n. 10.  The opinion is also "ipse dixit" testimony rejected by the Supreme Court in

*Joiner,* 522 U.S. at 146.  This opinion is inadmissible.

The opinion that Southwest personnel should have avoided the incident is another example

of the *ipse dixit* testimony rejected by the Supreme Court in *Joiner*.  It is wholly speculative and

conjectural for Laxineta to opine that Southwest should have avoided the incident.  The jury will

not be aided by that speculation, particularly when Laxineta has no knowledge of the training

provided to Southwest personnel, Southwest's procedures or industry standards, and there is no

evidence that an oversized bag was brought on board Southwest Flight 794 or that such a bag

played any role in the April 2, 2002 incident.

///

///

///

///

{30170.301680 0121183.DOC}                                    -16-
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SOUTHWEST'S
*DAUBERT* MOTION RE DIANE LAXINETA
S-03-1444 FCD PAN

## VIII.   <u>CONCLUSION</u>

For the foregoing reasons, Southwest requests the Court to conduct a *Daubert* hearing on Laxineta's qualifications and whether her preferred testimony satisfies the standards set forth in FRE 702, *Daubert, Kumho* and *Joiner.*  Southwest further requests this Court to enter an order that Laxineta is not qualified to testify in this case and that the opinions expressed in her Rule 26 report and in her deposition do not satisfy the standards for admissibility of expert testimony set forth in FRE 702, *Daubert, Kumho* and *Joiner.*

In the event that the Court determines that Laxineta is qualified to testify, Southwest requests an order limiting Laxineta's testimony on direct examination to those matters stated in her December 29, 2004, Rule 26 report, and that the Court make findings of which, if any, of Laxineta's opinions are admissible.

DATED: February _10_, 2006

KENNEY & MARKOWITZ L.L.P

By: _____
   STEPHEN C. KENNEY
   ELIZABETH L. DOLTER
   Attorneys for Defendant
   SOUTHWEST AIRLINES CO.

Kenney
&
Markowitz
L.L.P.

{30170.301680 0121183.DOC}   -17-
MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF SOUTHWEST'S
*DAUBERT* MOTION RE DIANE LAXINETA
S-03-1444 FCD PAN