UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

LINDA S. BEATTIE AND BRUCE BEATTIE,

       Plaintiffs,             CIV. NO. S-03-1444 FCD/PAN

    v.

SOUTHWEST AIRLINES           <u>PRETRIAL CONFERENCE ORDER</u>
CO., and DOES 1-100,

       Defendants.

_____/

       Pursuant to court order, a Pretrial Conference was held on July 29, 2005.  Steven M. Heller, appeared as counsel for plaintiffs. Stephen C. Kenney and Elizabeth L. Dolter , appeared as counsel for defendants.  After the hearing, the court makes the following findings and orders:

**I.  <u>JURISDICTION/VENUE</u>**

       Jurisdiction is predicated upon 28 U.S.C. § 1332  and has previously been found to be proper by order of this court, as has venue.  Those orders are confirmed.

## II.   JURY/NON-JURY

Trial shall be to a jury.

## III.   UNDISPUTED FACTS

1.   Plaintiff Linda Beattie and Bruce Beattie were, at all relevant times herein, husband

     and wife.

2.   Plaintiff Linda Beattie was in the course and scope of her employment at the time

     of the incident.

3.   At all relevant times, Southwest was a common carrier.

4.   On April 2, 2002, plaintiff Linda Beattie was a passenger on Southwest Flight 794 from Sacramento to San Diego.  Bruce Beattie was not a passenger on Flight 794.

5.   Linda Beattie was traveling to a work-related conference in San Diego.

6.   Southwest did not pre-assign seats on Flight 794.

7.   Passengers on Southwest Flight 794 boarded in groups after having been given a boarding pass on a first come, first served basis.

8.   Linda Beattie boarded Southwest Flight 794 and was seated in seat 5D.

9.   Seat 5D was a aisle seat on the right side of the plane (looking forward facing the cockpit).

10.  The aircraft on which the accident occurred was a Boeing 737.

11.  The incident that is the subject of this litigation occurred before take-off and before the aircraft had

pushed back from the gate.

12. Andrew Kane was the "A" flight attendant on Southwest Flight 794 on April 2, 2002; during passenger boarding, the "A" flight attendant stands in the front galley and greets passengers as they come on board.

13. John Houpt was the "B" flight attendant on Southwest Flight 794 on April 2, 2002; during passenger boarding, the "B" flight attendant stands at the aft of the aircraft.

14. Victoria Trujillo was the "C" flight attendant on Southwest Flight 794 on April 2, 2002; during passenger boarding, the "C" flight attendant stands at mid-cabin and assesses passengers' suitability to sit in the over-wing exit row.

15. All actions/acts done by the flight attendant Andrew Kane on Southwest Flight 794 on April 2, 2002, were done in the course and scope of his employment by Southwest.

16. Before the flight had pushed back the gate, a laptop bag fell from the overhead bin above Linda Beattie ("the overhead bin") while she was seated in Seat 5D on the aircraft.

17. Linda Beattie wrote an April 18, 2002, letter to Southwest containing the following statement:

> As Andrew [Kane] moved to the front [of the aircraft]; his steps and his previous actions were just enough to cause the computer bag to fall out directly onto my head.

3

18.   At all relevant times, Bruce Beattie has not resided
      with Linda Beattie, except on weekends and one evening
      per week due to their respective work assignments.

19.   During Flight 794, Linda Beattie filled out an In-Flight
      Report.  Linda Beattie's report states:

> seated in aisle seat 5D, overhead
> laptop fell out onto head.  Cracked
> head & right jaw pain.  Headache.
> Stiff neck.  Left eye twitch.
> 04/02/2002 about 9:00 a.m.

20.   During Flight 794, Jason Gleim, a passenger on Flight
      794, wrote a note which he handed to flight attendant
      Andrew Kane while on board the aircraft.  Jason Gleim's
      handwritten note states:

> 4/2/02

> I saw the person who tried turning
> the bag that fell on that lady … I
> would be willing to vouge [sic]
> that it wasn't yours or Southwest's
> fault, the bag was hanging by a
> "string" quote-unquote.  If more
> info needed, I'm here.

21.   During Flight 794, Andrew Kane completed an In-Flight
      Report.  Andrew Kane's
      report attached Linda Beattie's report and Jason
Gleim's note. His report also states:

> Some PAX. was moving luggage in bin
> to fit bags and a small lap top bag
> fell on lady and hit her in the
> head. I offered paramedics and gave
> ice, PAX said no paramedic needed.

> Witness #1 listed below wrote a
> note and I attached it.

> Also PAX. wanted to write what happened and I
> gave her an IPR, it is also attached.

4

22. Flight attendants John Houpt and Victoria Seager Trujillo completed In-Flight

   Reports which stated:

        I did not witness this incident.

        Andrew told me about it sometime during the flight. After learning about it, I did, in fact, check on the condition of the (injured) passenger as mentioned in his letter.

                (John Houpt Report)

                * * *

        Sorry don't know about incident.

                (Victoria Seager Trujillo)

23. Linda Beattie attended a work-related conference in San Diego immediately following her deplaning Flight 794.

24. Linda Beattie did not seek medical treatment while she was in San Diego.

25. Linda Beattie sought medical attention from her family doctor, Dr. Otashe Golden, upon her return from her business conference.

26. X-rays of Linda Beattie's spine taken on April 6, 2002, confirmed that there was no evidence of acute fracture or dislocation and no evidence of soft tissue swelling, and that Linda Beattie suffered from pre-existing degenerative disc disease.

27. Linda Beattie continued to work at her position with the State of California Employment Development Department ("EDD") after the incident.

28. Linda Beattie has been continuously employed by the EDD since the date of the incident.

29. On May 9, 2003, Linda Beattie's primary care physician, Dr. Otashe Golden referred her to a physiatrist, Dr. Thomas Pattison, a physiatrist and pain management specialist.

30. Dr. Pattison increased the level of Linda Beattie's treatment to include stronger medication, more physical therapy and two epidural steroid injections.

31. On August 5, 2004, Dr. Pattison referred Linda Beattie to neurosurgeon Dr. Cully Cobb.

32. On September 22, 2004, Dr. Cobb performed a two level anterior cervical diskectomy and fusion with iliac bone graphs at C5-6 and C6-7.

33. Linda Beattie was hospitalized for surgery from September 22, 2004 until September 24, 2004.

34. After the surgery, Linda Beattie returned to work on November 22, 2004, on a three day a week eight hour per day schedule.  Linda Beattie returned to work full time on December 6, 2004.

35. Linda Beattie has resumed her driving duties in connection with her work at the EDD, including a July 2005 work-related trip to Tulare, California during which she drove her automobile.

## IV.  DISPUTED FACTS

1. What caused the laptop bag to fall.

2. Whether Linda Beattie was struck by the falling laptop.

3. Where Linda Beattie was struck by the falling laptop.

6

4.   Whether the incident that is the subject of this litigation occurred before the doors to the passenger cabin had been closed.

5.   Whether a Southwest flight attendant stowed any luggage in the overhead bin before the laptop bag fell.

6.   Whether a Southwest flight attendant was in the process of stowing or rearranging any luggage in the overhead bin when the laptop bag fell.

7.   Whether a Southwest flight attendant was in the immediate vicinity of the overhead bin at the time the laptop bag fell.

8.   Whether a Southwest flight attendant was assisting a passenger in stowing luggage in the overhead bin before the laptop fell.

9.   Whether a Southwest flight attendant was touching the overhead bin at the time the laptop bag fell.

10.  Whether another passenger opened the overhead bin, which caused the laptop bag to become dislodged and fall on Linda Beattie.

11.  Whether another passenger was attempting to stow his/her luggage in the overhead bin when the laptop bag fell.

12.  Whether an alleged late-boarding passenger stowed or attempted to stow his/her carry-on luggage in the overhead bin before the laptop bag fell.

13. Whether, assuming there was a late-boarding passenger, that passenger placed or attempted to place "oversized" carry-on luggage into the overhead bin before the laptop bag fell.

14. Whether Linda Beattie was not paying attention to what was going on around her on the aircraft in the minutes before the laptop bag fell and at the time the laptop bag fell.

15. Whether Linda Beattie was visibly injured as a result of the laptop bag falling.

16. Whether Linda Beattie refused Southwest's offer of paramedic assistance after the laptop bag fell.

17. Whether Flight 794 had an on-time departure.

18. The weight of the laptop bag and its contents on April 2, 2002.

19. Whether Linda Beattie's pre-existing disc disease, if any, was asymptomatic before April 2, 2002.

20. Whether Linda Beattie's soft tissue injury caused her to experience symptoms of a chronic pre-existing degenerative disc disease approximately 13 months after the incident.

21. Whether Linda Beattie's medical treatment, including treatment related to her cervical surgery was causally related to the incident.

22. Whether Linda Beattie has been, and continues to be, restricted in her employment and job activities as a

8

direct result of the injuries she allegedly sustained in the incident.

23.  Whether Linda Beattie will incur future medical treatment/expenses as a direct result of injuries she allegedly sustained in the incident.

24.  Whether Linda Beattie's treating physician, Dr. Otashe Golden noted that Linda Beattie was "doing well" within ten days after the April 2, 2002, incident.

25.  Whether on April 5, 2002, Dr. Golden's diagnosis was that Linda Beattie has a cervical strain and concluded that the injury was a soft tissue injury.

26.  Whether Linda Beattie experience any radiating pain until May, 2003, 13 months after the April 2, 2002, incident.

27.  Whether a CT scan of Linda Beattie's cervical spine taken on or about April 4, 2003, showed evidence of post traumatic abnormalities, but only evidence of pre-existing degenerative multi-level disease.

28.  Whether a July 30, 2004, MRI report on Linda Beattie's cervical spine noted findings of chronic degenerative disc changes resulting in spurring and foraminal narrowing changes in the adjacent joints.

29.  Whether x-rays taken of Linda Beattie's spine on or about August 10, 2004, show multi-level degenerative changes, particularly at C5-6 and C6-7.

30. Whether Linda Beattie has incurred wage loss as a direct result of injuries she allegedly sustained in the incident.

31. Whether Linda Beattie will incur future wage loss as a direct result of injuries she allegedly sustained in the incident.

32. Whether Linda Beattie suffered emotional distress as a result of the April 2, 2002, incident and, if so, the extent of that distress.

33. Whether and to what extent Linda Beattie was unable to perform routine daily physical activities after the April 2, 2002, incident.

34. Whether and to what extent Linda Beattie was unable to participate in recreational activities after the April 2, 2002, incident.

35. The amount of medical expenses claimed by Linda Beattie in this action.

36. The amount of medical expenses incurred by Linda Beattie in treatment of the soft tissue injury she sustained in the April 2, 2002, incident.

37. The amount of other economic damages being claimed by Linda Beattie.

38. Whether Linda Beattie will be able to resume her pre-accident job functions.

39. Whether Linda Beattie continues to suffer pain and discomfort and, if so, how often and of what degree.

10

40.   Whether Linda Beattie  received any reduction in pay or any lost wages from April 2, 2002, to the present.

41.   Whether Linda Beattie's treating physician has cleared her to perform all of her job duties with the EDD, including driving.

42.   Whether Dr. Pattison increased the levels of Linda Beattie's treatment to include stronger medication, more physical therapy and two epidural steroid injections because her symptoms had not yet resolved.

43.   Whether on August 5, 2004, Dr. Pattison referred Linda Beattie to Dr. Cobb because her symptoms had not yet resolved.

44.   Whether Bruce Beattie has suffered a loss of consortium as a proximate result of Southwest's conduct.

45.   Whether the Beatties are spending time apart at night during the work week is due to anything other than necessity due to their respective work assignments.

46.   The amount of damages being claimed by plaintiff Brue Beattie with regard to his loss of consortium claim.

## V.   EVIDENTIARY ISSUES/MOTIONS IN LIMINE

A.   **Plaintiff Anticipates The Following Evidentiary Issues Will Be The Subject of Motions In Limine**

1.   Plaintiff will move to exclude testimony of Paula Gaudet for failure to produce with her report the entire Southwest Flight Attendant Manual.

11

2.   Plaintiffs will move to exclude testimony of  Dr. Ken Harrington.

3.   Plaintiffs will move to exclude the testimony of witness Sandra Moore, who purports to have had a conversation with flight attendant Andrew Kane regarding the April 2, 2002, incident.

**B.   Defendant Anticipates The Following Evidentiary Issues Will Be The Subject of Motions In Limine**

1.   Defendant will move to exclude all evidence and commentary about Southwest's liability insurance, including evidence or commentary about the fact that Southwest has liability insurance for the Beatties' claims.

2.   Defendant will move to exclude any reference to, evidence of or argument about  an offer of settlement and discussions and settlement references to whether any such discussions occurred.

3.   Defendant will move for an order that Linda Beattie be precluded from wearing her cervical collar in the courtroom, in the courthouse and in the immediate vicinity of the courthouse, including the courthouse grounds, parking lots and sidewalks.

4.   Defendant will move to exclude expert opinion of the standards of care applicable on the date of the incident.

5.   Defendant will move to exclude any evidence of Linda

12

Beattie's alleged future wage loss.

6.   Defendant will move to exclude the testimony of Diane Laxineta.

7.   Defendant will move to exclude any testimony about Diane Laxineta's

"experiment" on a recent Southwest flight and any similar experiments.

8.   Defendant will move to exclude expert opinion and testimony not previously disclosed by plaintiffs.

9.   Defendant will move to exclude evidence of plaintiffs' economic damages.

10.  Defendant will move to exclude the testimony of Denise Miller and Linda Patton-Finch.

11.  Defendant will move to exclude any argument or commentary about the theory of *res ipsa loquitur*.

12.  Defendant will move to exclude any evidence that Linda Beattie has suffered depression (or any other mental condition).

13.  Defendant will move to admit the testimony of Sandra Moore limited to her conversation with flight attendant Andrew Kane.

14.  Defendant will move to exclude any pleadings, deposition transcripts, trial transcripts or exhibits from prior cases against defendant.

15.  Defendant will move to exclude evidence of prior judgments against Southwest

16.   Defendant will move to exclude any evidence of/reference to any article or other documents generically relating to carry-on baggage limitations and/or the frequency of instances of baggage falling from overhead luggage compartments or injuries resulting from the same.

17.   Defendant will move to exclude references to/evidence of any documents or other tangible items that plaintiffs have not produced in response to defendant's discovery requests, or that plaintiffs did not disclose pursuant to Rule 26 disclosure requirements.

In limine motions shall be filed **at least fourteen (14)** *calendar* **days prior to trial.** Opposition, if any, must be filed **seven (7)** *calendar* **days prior to trial.** In limine motions will be heard at 9:00 a.m. on the date of trial.

## VI.   RELIEF SOUGHT

Plaintiffs seeks monetary damages, including, wage loss, hospitalization and medical expenses, general damages, loss of earning capacity, and loss of consortium.

Southwest seeks a dismissal with prejudice of plaintiffs' complaint.

## VII.   POINTS OF LAW/TRIAL BRIEFS

A.   The parties cite the following points of law:

Plaintiffs

1.   Whether defendant breached its duty to the plaintiffs.

14

2.    Whether defendant owed a duty of utmost care and
      diligence to persons on Southwest Airlines
      flight number 794 on April 2, 2002, for their
      safe carriage.

3.    Whether defendant owed a duty to persons on
      Southwest Airlines flight number 794 on April 2,
      2002, to provide everything necessary to those
      persons for their safe transport and to that end
      failed to exercise a reasonable degree of skill.

4.    Whether defendant complied with the airline
      industry standard of care.

5.    Whether defendant complied with its own
      standards.

**Defendant**

1.    Whether there is any basis for plaintiffs'
      assertion of *res ipsa loquitur*.

2.    Whether any state standard of care is preempted
      by federal law.

3.    Whether defendant complied with its own
      standards and with the airline industry standard
      of care.

4.    Whether plaintiff Linda Beattie has a valid wage
      or economic  loss claim.

5.    Whether plaintiff Bruce Beattie has a valid
      claim of loss of consortium.

B.    The parties are free to brief any additional points

15

of law necessary for resolution

at trial.

    C.   Counsel are directed to Local Rule 16-285 regarding

the contents of trial briefs.

Trial briefs should be filed **fourteen (14) calendar days prior to trial**.

<strong>VIII.  <u>ABANDONED ISSUES</u></strong>

<u>Plaintiffs</u>

Plaintiffs withdraw their claim for damages under a theory of strict liability.

<u>Defendant</u>

Defendant withdraws its Eighth, Fourteenth and Fifteenth Affirmative Defenses.

<strong>IX.   <u>JOINT STATEMENT OF CASE</u></strong>

The parties shall submit a short, jointly-prepared statement concerning the nature of this case that can be read to the jury at the commencement of trial (no exceptions).  The joint statement of the case shall include in <u>plain concise language</u> the claims of plaintiff(s) and claims of other parties, if any, and the corresponding defense(s) to the claims.  The purpose of the joint statement of the case is to inform the jury at the outset, what the case is about.  The statement shall be filed no later than fourteen (14) calendar days before the commencement of trial.  Concurrently with the submission of the statement, the parties shall send a copy

16

of the statement, in a word processing format, to:

fcdorders@caed.uscourts.gov.

## X.   **WITNESSES**

Plaintiff anticipates calling the witnesses listed on Attachment "A".

Defendant anticipates calling the witnesses listed on Attachment "B".

Each party may call a witness designated by the other.

A.   No other witnesses will be permitted to testify unless:

(1)  The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence which could not be reasonably anticipated at the Pretrial Conference, or

(2)  The witness was discovered after the Pretrial Conference and the proffering party makes the showing required in "B" below.

B.   Upon the post-Pretrial discovery of witnesses, the attorney shall promptly inform the court and opposing parties of the existence of the unlisted witnesses so that the court may consider at trial whether the witnesses shall be permitted to testify.  The evidence will not be permitted unless:

(1)  The witnesses could not reasonably have been discovered prior to Pretrial;

(2)  The court and opposing counsel were promptly notified upon discovery of the witnesses;

1    (3)   If time permitted, counsel proffered the witnesses

2 for deposition;

3    (4)   If time did not permit, a reasonable summary of the

4 witnesses' testimony was provided opposing counsel.

### XI.   EXHIBITS, SCHEDULES AND SUMMARIES

At present, plaintiff contemplates by way of exhibits those listed on Attachment "C".    At present, defendant contemplates by way of exhibits those listed on Attachment "D". Plaintiffs' exhibits shall be listed numerically.  Defendant's exhibits shall be listed alphabetically.  The parties shall use the standard exhibit stickers provided by the court:  pink for plaintiffs and blue for defendant.  All multi page exhibits shall be stapled or otherwise fastened together and each page within the exhibit shall be numbered.  The list of exhibits shall not include excerpts of depositions, which may be used to impeach witnesses.

Each party may use an exhibit designated by the other. In the event that plaintiff(s) and defendant(s) offer the same exhibit during trial, that exhibit shall be referred to by the designation the exhibit is first identified.  The court cautions the parties to pay attention to this detail so that all concerned, including the jury, will not be confused by one exhibit being identified with both a number and a letter.

A.   No other exhibits will be permitted to be introduced unless:

(1)   The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence which could not be reasonably anticipated at the Pretrial Conference, or

(2)   The exhibit was discovered after the Pretrial Conference and the proffering party makes the showing required in paragraph "B," below.

B.   Upon the post-Pretrial discovery of exhibits, the attorneys shall promptly inform the court and opposing counsel of the existence of such exhibits so that the court may consider at trial their admissibility.  The exhibits will not be received unless the proffering party demonstrates:

(1)   The exhibits could not reasonably have been discovered prior to Pretrial;

(2)   The court and counsel were promptly informed of their existence;                (3)   Counsel forwarded a copy of the exhibit(s) (if physically possible) to opposing counsel.  If the exhibit(s) may not be copied, the proffering counsel must show that he has made the exhibit(s) reasonably available for inspection by opposing counsel.

C.   As to each exhibit, each party is ordered to exchange copies of the exhibit not later than twenty-one (21) calendar days prior to trial. Each party is then granted ten (10) calendar days to object to the exhibit(s).   Objections will be heard at 9:00 a.m. on the date of trial.  The hearing on the objections will be scheduled at the same time that in limine motions are heard.  In making

19

the objection, the party is to set forth the grounds for the objection.  Each party is directed to present to Maureen Price, Deputy Courtroom Clerk, the original exhibits and one (1) copy for the court, no later than 3:00 p.m. on the Friday before trial, or at such earlier time as may be agreed upon.  As to each exhibit which is not objected to, it shall be marked and may be received into evidence on motion and will require no further foundation.  Each exhibit which is objected to will be marked for identification only.

       D.   The Court's copy shall be presented in a 3-ring binder(s) with a side tab identifying each exhibit by number or letter.  Each binder shall be no larger than two and one half  (2 ½)  inches in width and have an identification label on the front and side panel.  If this requirement is not practicable, please contact the courtroom deputy seven (7) days prior to trial to make other arrangements.

       E.   The parties shall also provide a 3-ring binder(s), identical to the Court's copy, for use on the witness stand.

       F.   The parties shall provide an original and three (3) copies of an exhibit list (corresponding to the marked exhibits).

## XII.   **DISCOVERY DOCUMENTS**

       A.   <u>Filing Depositions</u>.  It is the duty of counsel to ensure that any deposition which

20

is to be used at trial has been lodged  with the Clerk of the Court.  Counsel are cautioned that a failure to discharge this duty may result in the court precluding use of the deposition or imposition of such other sanctions as the court deems appropriate.  Do not file any courtesy copies with Chambers.

B.   <u>Use of Depositions</u>.  The parties are ordered to file with the court and exchange between themselves not later than seven (7) calendar days before the trial a statement designating portions of depositions intended to be offered or read into evidence (except for portions to be used only for impeachment or rebuttal).

C.   <u>Interrogatories</u>.  The parties are ordered to file with the court and exchange between themselves not later than seven (7) calendar days before trial the portions of Answers to Interrogatories which the respective parties intend to offer or read into evidence at the trial (except portions to be used only for impeachment or rebuttal).

**XIII.   <u>FURTHER DISCOVERY OR MOTIONS</u>**

Pursuant to the court's Status Conference Order, all discovery and law and motion was to have been conducted so as to be completed as of the date of the Pretrial Conference.  That order is confirmed.  The parties are free to do anything they desire pursuant to informal agreement.  However, any such agreement will not be enforceable in this court.

///

///

**XIV.   PROPOSED JURY INSTRUCTIONS, VOIR DIRE, VERDICT FORM**

**A.   Jury Instructions**

Counsel are directed to meet and confer and to attempt to agree upon a <u>joint set of jury instructions</u>.   **Counsel shall use the 2001 Ninth Circuit Model Jury Instructions and amendments therefore.   Alternate instruction or authority may only be used if Ninth Circuit Model Jury Instruction does not apply.**   The joint set of instructions shall be submitted electronically **fourteen (14) calendar days** prior to the date of the trial and shall be identified as the "Jury Instructions Without Objection."

As to instructions on which there is dispute, the parties shall adhere to the following procedure:

1.   The party offering contested instruction (s) shall submit the instruction(s) and a brief memorandum in support of the contested instruction(s).

2.   The party shall number the contested instruction in a manner that shows where each contested instruction should be placed in the tendered joint instructions.

3.   The contested instruction(s) and memorandum **shall be filed with the joint set of instructions.**

4.   The party opposed to the contested instruction(s) shall submit a brief memorandum succinctly stating the legal basis of the objection(s) **seven (7) court days prior to the date of the trial.**

All instructions shall be, to the extent possible, concise, understandable, and

free from argument.  See Local Rule 51-163(c).  Parties shall also note that any modifications of instructions from statutory authority, case law or from any form of pattern instructions must specifically state the modification by underlining additions and bracketing deletions, except in the "clean version" for use by the jury.

As to any instructions counsel desires to offer, they shall be prepared in accordance with Local Rule 51-163(b) which provides:

> "Two copies of the instructions shall be lodged.
> The first copy (file/chamber copy) shall contain
> each instruction written on a separate page,
> numbered and identified as to the party
> presenting it.  The instructions shall cite the
> decision, statute, ordinance, regulation or other
> authority supporting the proposition stated in
> the instruction.  The second copy (jury copy)
> shall be lodged with a cover sheet.  The cover
> sheet shall contain the appropriate caption
> (title, Court and cause) and an identification of
> the party presenting said instructions.  The
> instructions submitted for jury use shall each be
> written on a separate page and shall be in the
> same order as the file/chambers copy.  As jury

copy instructions may be duplicated and passed along to the jury, the individual instruction shall be <u>unnumbered</u> and <u>unidentified</u> as to the party presenting them and shall contain <u>no</u> citation to the authority supporting the proposition stated in the instruction (**"clean version")."**

**B.   Verdict Form**

The parties shall lodge a joint verdict form(s) concurrently with proposed jury instructions **fourteen (14) calendar days prior to the commencement of trial.** If necessary, a special verdict or interrogatories shall be included for all factual disputes submitted to the jury that must be resolved before questions of law can be decided, and for any other issue on which specific responses are desired.  See Local Rule 51-163(e).  Where disagreement exists, the parties shall explain the disagreement and file points and authorities supporting their respective positions **seven (7) court days prior to the date of trial.**

**C.   Voir Dire**

Most of the examination of prospective jurors will be conducted by the court.  The parties are directed to meet and confer and attempt to agree upon a joint set of proposed voir dire questions.  These questions shall include any voir dire questions supplied by the court that the parties believe are necessary.  The joint set of voir dire questions shall be lodged

with the court **seven (7) court days prior to the date of the trial**.   Parties may also submit proposed voir dire questions which are disputed.   Disputed voir dire questions shall also be lodged with the court **seven (7) court days prior to the date of trial**.

### D.   Electronic Submission

At the time of the electronic submission of their respective proposed jury instructions, verdict form(s), and voir dire questions as listed above, counsel shall also submit electronically to chambers, copies of these documents in a word processing format to: fcdorders@caed.uscourts.gov.

### E.       Failure to Participate

The failure of one or more of the parties to participate in the preparation of joint jury instructions, proposed verdict form(s), or voir dire questions does not excuse the other party or parties from their obligation to timely file these documents with the court in accordance with this Order.   In the event of such failure, the party or parties timely submitting these documents shall include a declaration setting forth the reason for the lack of participation.

### XV.   AUDIO/VISUAL EQUIPMENT

The parties are required to make a joint request, in writing to the Courtroom Deputy, Maureen Price, **twenty-one (21) calendar days prior to the commencement of trial** if they wish to reserve and arrange for orientation with all parties on the court's mobile audio/visual equipment for presentation of

evidence.  The request shall be sent via email to:

mprice@caed.uscourts.gov. There will be one date and time for

such orientation.  Because each courtroom is not individually

equipped with the mobile audio/visual equipment, the equipment

may already be reserved for another courtroom.  In such, case,

the parties will need to consult with Ms. Price if they wish to

furnish their own equipment and operator with the permanent

equipment in the courtroom.

<strong>XVI.   <u>STIPULATIONS</u></strong>

<u>Plaintiffs</u>

Plaintiffs stipulate to the foundational elements of the

documents produced pursuant to

subpoena or in response to requests for production of documents by

the parties herein including, but not limited to, the records and

billings of plaintiffs healthcare providers, her employer and her

employer's compensation carrier (State Fund).

Plaintiffs also stipulate that:

    1)   Evidence of liability insurance be excluded; and,

    2)   That evidence of all settlement

        negotiations/discussions be excluded.

<u>Defendant</u>

Defendant stipulate admissibility of the photos and

measurements taken of the laptop bag by Defendant's investigator.

<strong>XVII.   <u>AMENDMENTS/DISMISSALS</u></strong>

There are no requested amendments to pleadings, dismissals or

additions or substitutions of parties.

26

### XVIII.   SEPARATE TRIAL OF ISSUES

Trial on issues solely related to the punitive damage claim will immediately follow trial of the other issues if the jury finds such damages are recoverable.

### XIX.   SETTLEMENT

<u>Plaintiffs</u>

The parties believe that further negotiations between them and a court settlement conference (Local Rule 16-270) would be conducive to the expeditious and just disposition of the case.

<u>Defendant</u>

The parties have not had any settlement negotiations, other than defendant's pre-litigation offer to plaintiff .  Defendant does not believe a settlement conference under Local Rule 16-270 would be helpful.

### XX.   DAUBERT/KUMHO PROCEDURE

Hearing is set for March 17, 2006, at 9:30 a.m. Opposition papers are due by March 3, 2006 and Reply no later that March 10, 2006.

### XXI.   ATTORNEYS' FEES

The matter of the award of attorneys' fees to prevailing parties pursuant to statute will be handled by motion in accordance with Local Rule 54-293.

### XXIII.   ESTIMATE OF TRIAL TIME/TRIAL DATE

A jury trial is scheduled for June 20, 2006 at 9:00 a.m. The estimated length of trial is 14 days.  Counsel are to call Maureen Price, Courtroom Deputy, at (916) 930-4163, **twenty-one**

27

**(21) calendar days prior to trial** to ascertain the status of the trial date.

**XXIV.   <u>OBJECTIONS TO PRETRIAL ORDER</u>**

Each party is granted **ten (10) *court* days from the date of this Pretrial Order** to object to it or augment it.

IT IS SO ORDERED.

DATED: February 23, 2006


<u>/s/ Frank C. Damrell Jr.</u>

FRANK C. DAMRELL JR.
United States District Judge