Steven M. Heller, #79067
Paige M. Hibbert, #143105
Sandra Parker-Burns, #127512
HELLER & HIBBERT, LLP
6833 Fair Oaks Boulevard
Carmichael, California 95608
Telephone:   (916) 971-8500
Facsimile:   (916) 971-8501

Attorneys for Plaintiffs

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| LINDA S. BEATTIE and BRUCE C. BEATTIE<br><br>Plaintiff,<br><br>vs.<br><br>SOUTHWEST AIRLINES CO., and DOES 1 through 100, inclusive,<br><br>Defendants. | Case No. S-03-1444 FCD PAN<br><br>**PLAINTIFFS LINDA S. BEATTIE and BRUCE C. BEATTIES' MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT SOUTHWEST AIRLINES' *DAUBERT* MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF PLAINTIFFS' EXPERT, DIANE LAXINETA (FRE 104(a))**<br><br>**DATE:   March 17, 2006**<br>**TIME:   10:00 a.m.**<br>**COURTROOM: 25**<br><br>**TRIAL DATE:   June 20, 2006** |

-0-

# TABLE OF CONTENTS

**Page**

I   INTRODUCTION ........................................................   1

II   FACTUAL BACKGROUND ........................................   1

    A.   Statement of the Case .......................................   1

    B.   Plaintiffs' Disclosure of Laxineta as an Expert
           Re: Flight Crew Training and Safety....................   2

III   APPLICABLE LEGAL STANDARDS.............................   3

IV   DIANE LAXINETA'S QUALIFICATIONS ARE AMPLE
     AND MEET ALL APPLICABLE ADMISSIBILITY
     REQUIREMENTS.......................................................   8

V   DIANE LAXINETA'S OPINIONS ARE RELEVANT,
    GROUNDED, AND SHOULD BE ADMITTED...................   10

    A.   Laxineta's Deposition Testimony, Though Phrased
           Somewhat Differently than her Report, is Within the
           Scope of the Opinions Set Forth in Her Rule
           26 Report.............................................................   12

    B.   Laxineta's Opinions Regarding the Premise that the
           Flight Attendant Crew is Primarily Responsible
           For the Safety of Passengers on their Flight and
           that Many Airline Rules and Regulations are Designed
           for the Safety of the Passenger are Neither Legal
           Standards nor Conclusions do not Usurp the Role
           of the Court in Advising the Jury as to Governing
           Legal Principle......................................................   13

    C.   Laxineta's Opinion that Training must be Adequate
           to Prevent this Type of Accident is not *Ipse Dixit* but
           is Supported by Laxineta's Experience and
           Knowledge............................................................   14

    D.   Laxineta's Opinion Relating to Failure to Follow
           Southwest Regulations Relating to the Gathering of
           Witnesses with Respect to an Incident Report is Both
           Relevant and Germaine to this Action....................   16

    E.   Laxineta's Opinion Relating to Southwest's Personnel
           Having an Obligation to Intercept an Oversized Bag is
           Neither Speculative nor Based Upon an Erroneous
           Assumption...........................................................   16

    F.   Laxineta's Opinions Relative to Flight Attendant Kane's
           Failure to Carefully Handle Items in the Overhead Bin
           and Placing the Laptop in a Precarious Position in the
           Bin do not Usurp the Function of the Trier of Fact and
           is Helpful to the Jury.............................................   17

G.  Laxineta's Opinions are not Subject to Exclusion
Under Federal Rule of Evidence 403............................  19

H.  The Moving Party's Contention that Laxineta Should not
be Allowed to Testify without her Attempt to Reconstruct
the April 2, 2002 Incident is Blown out of Proportion and
is an Example of an Unreasonable Analysis in this
Matter...............................................................................  21

IV   CONCLUSION...............................................................................  21

# TABLE OF AUTHORITIES

**Cases**

Page

*Atmel Corporation v. Information Storage Devices, Inc.*
189 F.R.D. 410, 416 (N.D. Cal 1999)………………………………….. 9,10,12

*Berry v. City of Detroit*
25 F.3d 1342 (6th Cir. 1994)………………………………………… 4

*Daubert v. Merrell Dow Pharmaceuticals, Inc.*
509 U.S. 579 (1993)…………………………………………………… 1,3,5,6,7, 16,21

*Elis v. K-Lan Co.*
695 F.2d 157 (5th Cir. 1983)………………………………………… 5

*Frye v. United States*
293 F.1013 (D.C. Cir. 1923)………………………………………… 6

*Friendship Heights Assoc. v. Vlastimil Koubek*
785 F.2d 1154 (4th Cir. 1986)……………………………………… 4

*Guidroz-Brault v. Missouri Pacific Railroad Company*
254 F.3d 825 (9th Cir. 2001)………………………………………… 17

*Jinro America, Inc. v. Secured Investments, Inc.*
266 F.3d 1004………………………………………………………… 20,21

*Kumho Tire Co. v. Carmichael*
526 U.S. 137 (1999)…………………………………………………… 7,21

*Mukhtar v. Cal State University, Hayward*
299 F.3d 1053 (9th Cir. 2002)……………………………………… 18

*Satcher v. Honda Motor Co.*
52 F.3d 1311 (5th Cir. 1995)………………………………………… 4

*Thomas J. Kline, Inc. v. Lorillard, Inc.*
878 F.2d 791 (4th Cir. 1989)………………………………………… 5

*United States v. 14.38 Acres of Land Situated in Leflor County, Mississippi*
80 F.3d 1074, 1078 (5th Cir. 1996)………………………………… 7

*United States v. Candoli*
870 F.2d 506………………………………………………………… 19

*United States v. Dysart*
705 F.2d 1247 (10th Cir. 1983)……………………………………… 5

*United States v. Finley*
301 F.3d 1000 (9th Cir. 2002)……………………………………… 19

*United States v. Mende*
43 F.3d 1298 (9th Cir. 1995)………………………………………… 20

-iii-

**Statutes**

Federal Rules of Evidence § 104(a)…………………………………………….   7
Federal Rules of Evidence § 403………………………………………………   19,20
Federal Rule of Evidence § 702………………………………………………..   3,4,5,6,21
Federal Rule of Evidence § 703………………………………………………..   4
Federal Rule of Evidence 704(a)………………………………………………   18

I

## INTRODUCTION

As part of this case in chief, the Beattie plaintiffs intend to offer the opinion testimony of Diane Laxineta (hereinafter "Laxineta"). Ms. Laxineta will offer opinions with respect to issues regarding causation, standard of care, and fault in this action. In the instant motion, Southwest contends that Laxineta's experience will not allow her to qualify as an expert as to any of the opinions for which she was disclosed. Said motion is based on *Daubert* and it's progeny. Plaintiffs will establish by way of this opposition that Ms. Laxineta's stated opinions are relevant and germane to this action, should be admitted and, by any standard, consists of specialized knowledge which will assist the trier of fact to understand the evidence in this case and/or to determine facts in issue. This witness is qualified to act as an expert by her knowledge, skill, experience, training, and education and is qualified to offer opinions in that regard. Moreover, Ms. Laxineta's testimony is based upon sufficient facts and data, is the product of reliable principles and methods and the witness has applied those principles and methods reliably to the facts in the case herein. Finally, it will be shown that Ms. Laxineta's opinions are not subject to exclusion pursuant to Federal Rules of Evidence section 403.

II

## FACTUAL BACKGROUND

### A.    Statement of the Case.

This instant action arises out of an incident on a Southwest flight (Flight No. 794) which occurred on April 2, 2002. Plaintiff Linda Beattie (hereinafter "Ms. Beattie"), was a passenger on the subject flight in route to a work-related conference. She was traveling at the time with a number of her colleagues from the California State Employment Development Department. Prior to take off, a travel bag holding a laptop computer, a number of books, computer paraphernalia, and other items fell from an overhead bin above Ms. Beattie. The bag and it's contents struck Ms. Beattie on the head. As a result of injuries sustained by Ms. Beattie during the incident, the subject of this litigation, she was

-1-

forced to undergo a two level anterior cervical discectomy and fusion with iliac bone graph at C5-C6 and C6-C7 on September 22, 2004.  Plaintiff Ms. Beattie has incurred in excess of $90,000.00 in medical specials.  Plaintiff Bruce Beattie is a party to this action and claims damages for loss of consortium.

Plaintiff contends that Southwest flight attendant Andrew Kane (hereinafter "Kane"), negligently caused the computer bag to fall from the overhead storage bin while he was arranging carry-on luggage in the overhead bin to allow for the insertion of a late-boarding passenger's oversized bag.

Southwest Airlines maintains that neither flight attendant Kane, nor any of its other flight attendants caused the carry-on bag to fall.  Southwest maintains that there is no evidence that an oversized bag (i.e. a bag exceeding the size limitations for carryon luggage) was ever brought on board the subject flight by a late boarding or other passenger.

There are a number of witnesses to the subject accident.  As is often the case, human perception being what it is, there are differences in these individuals' recollection and memories regarding the incident.  While there are differences with respect to the eye witness testimony in this matter, it is undisputed that the laptop bag fell from the overhead compartment.  Defendant admits that there is a vigorous factual dispute regarding Kane's participation in the stowage of carry-on process (Defendant's Memorandum of Points and Authorities at 10:25 - 26) as a result of the varied recollections of the percipient witnesses' herein.

## B.   Plaintiffs' Disclosure of Laxineta as an Expert Re: Flight Crew Training and Safety.

The Beatties disclosed Diane Laxineta as their expert witness in this matter.  In plaintiffs' expert disclosure statement plaintiffs identify Laxineta as "an expert in flight crew training and safety including, but not limited to, the proper storing of luggage in overhead bins, including, but not limited to, how such activities relates to passenger safety.  Ms. Laxineta will testify as to all liability aspects in this case including, but not limited to, the appropriate crew training relative to overhead luggage storage in general and as it pertains

to passenger safety." (Exhibit "1")  On or about December 29, 2004, plaintiffs produced Laxineta's Rule 26 report.  Said report (Exhibit "2") sets forth a number of opinions. Thereafter, in preparation for her deposition, Ms. Laxineta created a deposition notes document wherein she sets forth bullet point summaries of her opinions.  Rather than following the Rule 26 report for the purposes of the deposition, counsel for Southwest Airlines himself referred to the opinions set forth in the notes that Ms. Laxineta made in preparation for the deposition.  (Exhibit "3", which was Exhibit "5" to the deposition of Laxineta at 67:28 - 68:14, 74:7 - 75:1-3)

Southwest Airlines contends that the opinions offered by Laxineta in her deposition are somehow made in bad faith beyond the Rule 26 disclosure of Ms. Laxineta's opinion. This is simply not the case.  As indicated above, it was Southwest Airlines' counsel who decided to follow from Ms. Laxineta's personal notes which she prepared to assist her in the deposition for the purposes of his questioning of her in the deposition.  Moreover, the opinions offered in the deposition do not vary materially from those set forth in the Rule 26 expert witness disclosure.  (Exhibit "1")

### III

### APPLICABLE LEGAL STANDARDS

Federal Rule of Evidence 702 is the basic rule concerning expert witnesses.  In essence, an expert witness may be employed if the expert has specialized knowledge that would be helpful in deciding the case correctly, and if the expert's testimony is sufficiently reliable to assist the fact finder.  The intent of the Rule is to liberalize the admissibility standards for expert testimony.  See, e.g., *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993) (noting that cross-examination, rather than exclusion, is the correct means of dealing with "shaky" expert testimony).

F.R.E. 702 provides as follows:

> If scientific, technical, or other specialized knowledge will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training, or education, may testify thereto in the form of an opinion or otherwise, if (1) the testimony is based upon sufficient facts or data, (2) the testimony is the product of reliable

-3-

principles and methods, and (3) the witness has applied the
principles and methods reliably to the facts of the case.

Rule 702 requires that the expert possess some specialized knowledge, skill, or
education that is not in the possession of the jurors. Without such special qualifications, it is
difficult to see how anyone could be helpful to the jury, which is the fundamental
requirements for qualifying as an expert. The specialized knowledge may be derived from
experience as well as from education or training. (*Satcher v. Honda Motor Co.*, 52 F.3d
1311 (5th Cir. 1995))

A witness may qualify as an expert on the basis of knowledge, skill, training,
education, or experience. These bases for qualification are disjunctive. See, e.g.,
*Friendship Heights Assoc. v. Vlastimil Koubek*, 785 F.2d 1154 (4th Cir. 1986) Whether a
witness is qualified as an expert can only be determined by the nature of the opinion
offered. Thus, experience may be a crucial component for one type of expert opinion,
whereas academic training may be essential for another. *Berry v. City of Detroit*, 25 F.3d
1342 (6th Cir. 1994) (an expert could testify to principles on the basis of training with no
experience, but testimony as to the effect of applying those principles requires a basis in
experience).

Federal Rule of Evidence 703 provides the basis of opinion testimony by experts and
states:

### Rule 703. Bases of Opinion Testimony by Experts

The facts or data in the particular case upon which an expert bases
an opinion or inference may be those perceived by or made known
to the expert at or before the hearing. If of a type reasonably relied
upon by experts in the particular filed in forming opinions or
inferences upon the subject, the facts or data need not be
admissible in evidence in order for the opinion or inference to be
admitted. Facts or data that are otherwise inadmissible shall not be
disclosed to the jury by the proponent of the opinion or inference
unless the court determines that their probative value in assisting
the jury to evaluate the expert's opinion substantially outweighs
their prejudicial effect.

Fundamentally, the Courts have been reluctant to exclude an expert on the ground
that he or she is not qualified. Courts have not required a party to show that the witness is
an outstanding expert, or to show that the witness is well-known or respected in the field.

-4-

These are generally questions of weight.   The expert need not have encyclopedic knowledge about the field in question. (*Elis v. K-Lan Co.* 695 F.2d 157 (5th Cir. 1983))  Nor is it necessary, at least on the question of qualifications, for an expert to have published or researched on the matter to which she testifies.  *United States v. Dysart*, 705 F.2d 1247 (10th Cir. 1983)

In the instant matter, the moving party is using the vehicle of a *Daubert* motion for the purpose of questioning the weight of Laxineta's testimony rather than for the traditional purpose of examining the admissibility of scientific evidence with reference to whether the same had gained general acceptance in the particular field in which it belonged.

Here the witness, the subject of the instant motion, is possessed of "specialized" knowledge which will assist the jury in determining difficult questions which are beyond the realm of common knowledge.[1]

This witness will testify to the policies and practices of airlines with respect to the handling and storage of luggage in overhead bins in the cabin of the plane.  This testimony will also include testimony relating to training of the flight attendants and their relative duty to passengers.  Unlike the subjects of typical *Daubert* motions, the testimony here is not rocket science.[2]  Plaintiff does not contend that any self-described "expert" will automatically be allowed to testify.  The requirements of Rule 702, though nominal, have occasionally been breached, and Courts are not hesitant to exclude the "expert" who is utterly lacking.

An extreme example was presented in *Thomas J. Kline, Inc. v. Lorillard, Inc.*, 878 F.2d 791 (4th Cir. 1989).  The plaintiff called an "expert" who would testify that a certain credit practice was tantamount to price discrimination.   But the witness was not an economist, she had no experience in making credit decisions, and she had done no research or writing in the subject matter of her testimony.   Indeed, her only stated

---

[1] It is ironic that defendant points out that Ms. Laxineta has not previously qualified as an expert, when Ms. Gaudet, defendant's expert, admits that this is the first time that she has ever been in a situation to testify as an expert witness. (See Gaudet deposition 5:1 - 6, Exhibit "6").

[2] Or as in the *Daubert v. Merrell Dow Pharmaceuticals, Inc.* (509 US 579) (1993), the recalculation or reanalysis of pharmacological studies that allegedly showed a connection between benediction and substances known to cause birth defects.

1  qualification was that she was employed by a company who hired out experts to testify in
2  sophisticated financial litigation.  The Court of Appeals understandably concluded that this
3  was not enough.  It declared that "[a]lthough the spirit of the Rules of Evidence is to eschew
4  excessive restrictions on the admissibility of testimony, the plain language of the Rules
5  maintains some limitations on expressions of opinion.  Such is simply not the case in this
6  instant matter.

7         A brief history of *Daubert* and its predecessors and successors is appropriate to
8  illustrate the inappropriateness of the instant motion.  The "junk science" line of cases
9  originated with the well-known case of *Frye v. United States*, 293 F.1013 (D.C. Cir. 1923).
10  The Court indicated that before scientific evidence could be admitted it had to gain general
11  acceptance in the particular field to which it belonged.  Up until 1993, there was
12  considerable controversy as to whether Rule 702 incorporated or rejected the *Frye* "general
13  acceptance" test.  In *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), the
14  Supreme Court unanimously rejected the *Frye* test as a basis for assessing the admissibility
15  of scientific expert testimony under Rule 702.  In *Daubert*, the Court established general
16  flexible guidelines for determining the admissibility of scientific expert testimony.  The Court
17  held that Rule 702 of the Federal Rules requires the Trial Judge to act as a "gatekeeper" for
18  such testimony, to assure that it truly proceeds from "scientific. . . knowledge" as required by
19  the Rule.  The Court declared that a Trial Judge must evaluate the proffered testimony to
20  assure that it is at least minimally reliable; concerns about expert testimony cannot be
21  simply referred to the jury as a question of weight.

22         The majority in *Daubert* set forth a five-factor, nondispositive, nonexclusive, "flexible"
23  test to be employed by the Trial Court under Rule 702 in determining the "validity" of
24  scientific evidence. These factors are:

25         (1)     whether the technique or theory can be or has been tested;

26         (2)     whether the theory or technique has been subject to peer review and
27  publication;

28         (3)     the known or potential rate of error;

-6-

(4)　the existence and maintenance of standards and controls; and

(5)　The degree to which the theory or technique has been generally accepted in the scientific community.

The *Daubert* Court remanded the case because the Lower Courts had excluded the testimony of the plaintiffs' scientific experts solely on the basis that their methodology was not generally accepted in the scientific community and was not peer-reviewed.

A review of the case law after *Daubert* shows that the rejection of expert testimony is the exception rather than the rule.　*Daubert* did not work a "seachange over federal evidence law," and "the trial court's role as gatekeeper is not intended to serve as a replacement for the adversary system." (*United States v. 14.38 Acres of Land Situated in Leflore County, Mississippi*, 80 F.3d 1074, 1078 (5th Cir. 1996))　As the Court in *Daubert* stated:　"Vigorous cross-examination, presentation of contrary evidence, and careful instruction on the burden of proof are the traditional and appropriate means of attacking shaky but admissible evidence." (509 U.S. at 595)　Likewise, the post-*Daubert* amendment is not intended to provide an excuse for an automatic challenge to the testimony of every expert. (See *Kumho Tire Co. v. Carmichael*, 526 U.S. 137 (1999)) (nothing that the trial judge has the discretion "both to avoid unnecessary 'reliability' proceedings in ordinary cases where the reliability of an expert's methods is properly taken for granted, and to require appropriate proceedings in the less usual or more complex cases where cause for questioning the expert's reliability arises.").

Likewise, Federal Rule of Evidence 104(a) guides a trial judge in determining whether a witness proposing to testify is qualified.

Federal Rule of Evidence 104 provides as follows:

### Rule 104. Preliminary Questions

(a)　Questions of admissibility generally.　Preliminary questions concerning the qualification of a person to be a witness, the existence of a privilege, or the admissibility of evidence shall be determined by the court, subject to the provisions of subdivision (b). In making its determination it is not bound by the rules of evidence except those with respect to privileges.

-7-

IV

## DIANE LAXINETA'S QUALIFICATIONS ARE AMPLE AND MEET
## ALL APPLICABLE ADMISSIBILITY REQUIREMENTS

Ms. Laxineta's qualifications are ample and will satisfy all applicable admissibility requirements.

Ms. Laxineta's prior deposition testimony and any prospective voir dire herein will confirm that she is imminently qualified to offer the opinions to which she has opined in this matter.

Ms. Laxineta's resume is a prime example of a career woman, in the early 1970's, rising from an entry level position as a flight attendant to that of an upper echelon policymaker.

In brief,[3] Ms. Laxineta was hired as a flight attendant by Pan American Airlines in 1970 (Laxineta Depo, Exhibit "5" at 55:5-18).  Over the next 16 years in her 18 year career, Ms. Laxineta in her administrative capacity garnered a wide scope of experience with the airline industry including but not limited to, employment issues, scheduling, budgeting, public relations, aircraft evaluations, and supervision of independent contractors, culminating with her ascension to the position of General Manager of Pan America's Los Angeles operations for the period 1985-1988 (Exhibit "3" (CV).

Despite her ascension in the ranks, Ms. Laxineta remained FAA certified as a flight attendant through 1988 which allowed her to both work as a flight attendant on an as-needed basis and to occupy the in-cabin jump seat during her business trips.[4]

Upon leaving Pan Am, Ms. Laxineta continued her association and contact with the airline industry acting as a management consultant and expert witness (Laxineta Depo at 17:7-14, 19:7-21; 16:14-18).

Further, Ms. Laxineta in the course of her employment with Pan Am developed an extensive network of colleagues in the industry including flight attendants and management

---

[3] For purposes of brevity Ms. Laxineta's CV is attached hereto as Exhibit "3".
[4] Which afforded her an opportunity to personally observe flight attendant practices on an average of four to five times per month.

1  personnel upon which she was able to draw on-going exposure to industry policies.  While
2  an added component to this expert's knowledge, skill, experience, or training, Ms. Laxineta
3  does not rely exclusively on that exposure.  (Laxineta Depo at 51:12-53:15)

4       Defendant contends that because Ms. Laxineta had not been a flight attendant, nor
5  had she personally received flight attendant training for 15 years, that she cannot be current
6  on the issues relevant to flight attendant operations as it relates to safe carry-on baggage
7  handling.  Although admitting that her prior work with flight attendant operations might have
8  been pertinent, (Defendant's points and authorities, 5:11-12) defendant contends that the
9  passage of time has placed Laxineta's knowledge, skill, experience, or training outside the
10  bounds of being helpful to assist the trier of fact to understand the evidence.

11       It is therefore telling that in her deposition, Paula Gaudet, defendant's expert,
12  admitted that training relative to overhead baggage storage has not changed in the past 20
13  years.  At page 11 of her deposition Ms. Gaudet conceded that:

14            Q:    Has the training for a Southwest flight attendant, other than
               the 9-11 issues, changed in any material way relative to what they
15             are supposed to do concerning overhead baggage storage?

16            A:    No.

17            Q:    So in other words, if somebody who had gotten their training
               relative to overhead baggage storage in 1985 came back in 2005,
18             they'd essentially see the same things.  Is that a fair statement?

19            A:    Yes.

20  (Exhibit "6", Gaudet Deposition 11:6 - 15)

21       The sole and only unsubstantiated change in baggage handling offered by defendant
22  in support of their passage of time theory is that the duties of flight attendants have shifted
23  post-911.  (Defendant's points and authorities, p. 5, fn. 1).  Of course, defendant neither
24  quantifies nor qualifies how such changes responsive to the threat of terrorism has impacted
25  the proper way to store baggage in an overhead bin.  Defendant cites that matter of *Atmel*
26  *Corporation v. Information Storage Devices, Inc.* 189 F.R.D. 410, 416 (N.D. Cal 1999) for
27  the proposition that unrefreshed knowledge as to the general knowledge of an entire
28  community almost a decade ago could not alone be the basis for an expert's opinion.

In *Atmel*, the expert opined that the plaintiff's alleged trade secrets were not generally known in the semiconductor industry (a volatile and evolving industry in the 1980's and 1990's).   In *Atmel* the court allowed the expert to testify narrowly even when it was discovered that the expert consciously decided, at the suggestion of litigation counsel, not to review the relevant universe of literature or to consult colleagues familiar with techniques known and unknown during the relevant time period.

Here, defendant offers no evidence (and there is none before the court) that the process of safely storing items in an overhead bin has changed in the last two decades or that the laws of gravity have changed in that same period.  Instead, defendant makes a broad leap to conclude that as a result of a lapse in time that Laxineta therefore has no foundational knowledge of the standard practices in the industry.

Remembering that expert witnesses' qualifications are <u>disjunctive</u>, Laxineta need only show that she has qualifications by way of her skill, knowledge, experience, <u>or</u> training. Despite the disjunctive nature of the requirements, Laxineta has sufficient knowledge of the standard practices which existed in the airline industry in 2002 with regard to the stowage of baggage.  In addition to her training, experience, and skill she reviewed Southwest Airlines' expert Gaudet's disclosure statement, Southwest Airlines' mission Statement, materials available of Southwest's website, the depositions of the flight attendants on duty during the subject incident, the depositions of percipient witnesses as well as Southwest's flight Attendant Manual.  (Exhibit "4")

Laxineta is amply qualified to opine as to the standards and practices for baggage stowage in overhead bins.

**V**

## DIANE LAXINETA'S OPINIONS ARE RELEVANT, GROUNDED, AND SHOULD BE ADMITTED

As previously indicated, Diane Laxineta authored her Federal Rules of Civil Procedure, Rule 26 report on December 29, 2004.  Set forth therein are the following opinions:

1.     That flight attendant Kane did not attempt to ascertain what may have been causing the passenger who place the luggage in the overhead compartment to be impeded in the process;

2.     That flight attendant Kane did not attempt to ascertain whether the placement of baggage in the overhead bin had become a safety hazard to any of the passengers sitting below;

3.     That as a result of flight attendant Kane's actions or inactions that a laptop fell from the overhead bin onto plaintiff;

4.     That flight attendant Kane had a responsibility during boarding to monitor boarding passengers for heavy or oversized carryon luggage;

5.     That flight attendant Kane should have intercepted the oversized bag that the passenger was placing prior to her attempting to stow it herself;

6.     That flight attendant Kane should have diverted the bag to storage in the belly of the aircraft;

7.   That a flight attendant should have assisted the passenger placing the overhead bag to avoid the accident;

8.     That had Southwest Airlines flight attendant observed proper policy and procedure the incident would not have occurred (Exhibit "2").

As previously indicated, Ms. Laxineta, in preparation for her deposition, prepared summary notes for herself. At the direct request of counsel for Southwest Airlines, her deposition was conducted within the framework of those notes. (Exhibit "5", deposition of Laxineta at 67:28 - 68:14, 74:7 - 75:1-3) Those opinions, as solicited by Southwest Airlines' counsel in her deposition are as follows:

1.     Flight attendant crew is primarily responsible for the safety of the passengers on their flight;

2.     Many airline rules and regulations are designed for the safety of the passenger;

3.     Training has to be adequate to provide this kind of accident from happening;

4.     The flight attendants did not follow Southwest Airlines regulations by giving an account of the accident and attempting to provide three witnesses to the accident as they were required to do in the Flight Attendant Manual;

5.     That the customer service agents responsible for Flight No. 794 did not take the late-boarding passenger's oversized bag away before she entered the aircraft which could have prevented the accident;

6.     That flight attendant Kane was observed moving the late-boarding passenger's bag and other passengers' items around in the overhead bin by several witnesses;

7.     That flight attendant Kane did not carefully handle the items in the overhead bin to make sure nothing would fall out;

8.     That flight attendant Kane's actions in moving the late-boarding passenger's bag and other luggage in the overhead bin caused the laptop to be placed in a precarious position in the bin and subsequently fell out;

9.     That flight attendant Kane subsequently caused the accident.

**A.     Laxineta's Deposition Testimony, Though Phrased Somewhat Differently than her Report, is Within the Scope of the Opinions Set Forth in Her Rule 26 Report.**

Although phrased somewhat differently from her Rule 26 report's opinions, the deposition testimony solicited by counsel for Southwest of Ms. Laxineta is well within the scope of her opinions authored in her Rule 26 report.  Again, it should be noted that the nature and form of the questioning in the deposition was controlled by and prompted by counsel for Southwest who chose to follow the opinions in the deposition notes rather than to follow the Rule 26 report.  Defendant cites that matter of *Atmel Corp. v. Information Storage Device, Inc.*, for the proposition that an expert should not be allowed, on direct examination, to rely on more than he disclosed in his Rule 26 report.  Defendant further comments that an expert may not testify on direct examination on matters deliberately ignored in his Rule 26 report.  As indicated in the previous analysis of *Atmel*, that case was an egregious case wherein the expert witness, solely for the purposes of litigation tactics purposefully ignored information and evidence available to him in order to fain ignorance at

the deposition and to allow him to form additional conclusions thereafter.  (See generally *Atmel*)  Here, Laxineta has offered, what in her deposition notes are referred to as opinions, but are in fact more properly characterized as foundation conclusions.  A careful review of the opinions set forth in the Rule 26 report and those set forth in the deposition clearly demonstrate that those opinions are consistent.  To the extent that the deposition testimony is broader, the same is merely reflective of conclusions upon which Laxineta based her opinions (i.e. that flight crews are responsible for passenger safety and that many airline regulations are designed for the safety of the passenger).  (See below)

**B.    Laxineta's Opinions Regarding the Premise that the Flight Attendant Crew is Primarily Responsible for the Safety of Passengers on their Flight and that Many Airline Rules and Regulations are Designed for the Safety of the Passenger are Neither Legal Standards nor Conclusions do not Usurp the Role of the Court in Advising the Jury as to Governing Legal Principles.**

The two opinions to which defendant objects with respect to the assertion that Laxineta's testimony has usurped the court's role in instructing the jury about applicable law are:

- That the flight attendant crew is primarily responsible for the safety of passengers on their flight;

- Many airline rules and regulations are designed for the safety of the passengers.

Of course defendant offers no analysis as to how Laxineta is usurping the role of the court and advising the jury of the governing legal principles.  Here, these statements reflect merely standard of care issues in the overall analysis of what the role of the flight attendants is for the purposes of providing services in cabin and the fact that the airlines have standards with respect to the provision of safety for passengers.  Nothing about either of those opinions are intended to, nor with a reasonable interpretation thereof, reflect a statement that the expert is giving an opinion vis-à-vis applicable law.  There is no analysis, nor can any be reasonably set forth, that either of the two foregoing statements intruded on the judgment's role with respect to why flight attendants are present in cabin or why the

-13-

1  airline industry creates it's own standards of care.   Instead these opinions go to the
2  foundation of Laxineta's main opinions and conclusions that the flight attendants failed to
3  meet the minimum standard of care set forth by Southwest Airlines in their policies and
4  procedures and that they failed to comply with the general standards and training with
5  respect to industry standards for the safe stowage of carry-on luggage in cabin.

6      **C.    Laxineta's Opinion that Training must be Adequate to Prevent this Type
7             of Accident is not *Ipse Dixit* but is Supported by Laxineta's Experience
             and Knowledge.**

8      Laxineta offers a further opinion that:  training has to be adequate to prevent this kind
9  of accident happening.

10      Defendant contends that there is no evidence regarding a lack of training and thus no
11  relationship to the facts in the case, no reliability, and that therefore this opinion is merely
12  the *Ipse Dixit* of the expert.  Defendant Laxineta clearly sets forth in her deposition the basis
13  for which she forms that opinion.

14          Q:    And what is the primary - - well, what are the basis for that
15          opinion?

16          A:    Okay.   - - and you can go back to the flight attendants'
          depositions, that what sticks in their head primarily is the - - we call
17          the sexier kind of things about security and safety prevention, which
          would be evacuation and the accident mishaps, but the routine day
18          to day kind of security regulations some of them don't stay or aren't
          given as much emphasis by the airlines as they should be.

19          There is probably a higher propensity for a bag falling out of an
20          overhead bin then there is for a crash on Southwest Airlines.  And
          so I concluded that they should have some kind of training in this
21          area and any other area that may be a chronic problem.  We used
          to do this in Pan American, you don't have to have a training course
22          per se what you should do is perhaps have a video that can be
          shown at a briefing or in the crew lounge, you could have updates
23          to the flight attendant manual, there could be various different ways
          you can improve the safety on board your aircraft that are in
24          problem areas that many airlines have.

25                                  * * *

26          Q:    When you said chronic problems a while ago, you weren't
          necessarily making a specific reference to that type of issue?

27          A:    When I said chronic problems I'm drawing from my own
28          experience being with the airline for 18 years and having had a bag
          fall out of an overhead bin is something that happens more often
          than a crash.  I believe that was my example.

-14-

\* \* \*

Q:    . . . I guess I am trying to understand the reference to chronic problems.

A:    In one of the flight attendants' testimony I believe he or she referred to recurrent training that they must go through once a year, and the basis for that recurrent training primarily is emergency procedures that they must follow in the event of an accident or an incident or a crash.  And that's what I meant about more emphasis on that.  Because you are dealing with a life or death issue when you have a crash.

\* \* \*

Q:    . . . the flight attendants have been vague on their training is that what you're saying?

A:    On their training in overhead bins in the storage of luggage into the overhead bins and how you handle that.  They - - when whoever asks the questions ask them, you know, what is training that covers this, they were confused as to whether this happened in their initial training, if it happened in the initial training at all, whether it happened in the current training, or did it come just through briefing those in publications, there was an ambiguity or a - - you know, I didn't get a consistent trend that yes, we were trained in the area in our initial training, yes, I remember that.  So that's what I'm referring to.

\* \* \*

Q:    Now, are you aware of whether to this date, as to this time Southwest actually does those types of things?  (Training re proper handling of baggage)

A:    In the flight attendant depositions they refer to these, I don't remember the specific area, but there was a theme throughout, and Mrs. Trujillo mentioned that there had been a various number of updates that she gets on an annualized basis, I think someone tried to ask her if it was 10, was it 20, and I don't remember exactly her response, but she referred to updates in the manual and briefing notes that they get.

(Deposition of Laxineta at 91:10 - 99:21)

As reflected above, Laxineta's opinion is based upon the expert's personal knowledge, experience, and training in this regard as well as the deposition testimony of Southwest's own employees.

///

///

-15-

**D.  Laxineta's Opinion Relating to Failure to Follow Southwest Regulations Relating to the Gathering of Witnesses with Respect to an Incident Report is Both Relevant and Germaine to this Action.**

Laxineta offers an opinion that the flight attendants did not follow Southwest Airlines' own requirement that cabin crew get an account of the incident and provide three witnesses to the accident pursuant to Southwest Airlines in the flight attendant manual.  There is clearly a factual dispute as to whether or not flight attendant Kane acted properly in obtaining witnesses to the incident and preparing an incident report.  To the extent that Southwest intends to offer the incident report and the attached handwritten notes from passenger Jason Gleim stating that Southwest was not at fault when another passenger tried "turning the bag that fell on that lady", the reliability of that report is at issue.  As such Laxineta's opinion that the report fails to comply with Southwest's own regulations relates to an issue in the case that is relevant and is helpful to the jury in making a determination of whether or not Southwest's regulations were in fact properly followed by Kane in preparing the report and gathering witness information. (*Daubert*, 509 U.S. 591)

**E.  Laxineta's Opinion Relating to Southwest's Personnel Having an Obligation to Intercept an Oversized Bag is Neither Speculative nor Based Upon an Erroneous Assumption.**

One of the problems with the instant motion is that the moving party mistakes issues relevant to the weight of the evidence for issues regarding the application to the factors set forth in *Daubert* and it's progeny.  Whether or not a bag was oversized for the purposes of this analysis is a factual issue to be weighed and determined by a jury.  Here Laxineta is presented with evidence that leads her to believe that the same is, in fact, oversized.  It is from that determination that she then renders an opinion.  As indicated in the moving party's brief, Laxineta bases her reliance upon witness statements relative to the size of the bag. Whether or not there was sufficient weight of evidence for her to make that determination is the issue, not whether the determination is speculative or otherwise erroneous.  Moreover, the actual bag and its contents have measured in this matter and are likely to be presented at trial.  Again, the question of whether the bag is oversized will be one subject to verification at the trial in this matter as to the weight of the evidence.  Moreover, the opinion of Laxineta

1 | that the customer service personnel should have intercepted the oversized bag is identical
2 | to that offered by defendant's expert witness Paula Gaudet who states in her deposition at
3 | 81:12 - 18 that:

> Q:     So if someone on the particular date this accident happened
> was boarding with an oversized bag, and if they - - it would fall to
> the ops agent and flight attendants to recognize that, intercept it
> before they got it on the airplane or farther down the airplane?
>
> A:     Yes.

8 | (Exhibit "6", Gaudet deposition)

9 | It is not uncommon that when facts are in dispute, experts sometimes reach different
10 | conclusions based on competing versions of the facts.  Thus, the trial court should not
11 | exclude an expert's testimony on the ground that a different expert or party believes one
12 | version of the facts and not the other.

13 | Defendant sites the matter of *Guidroz-Brault v. Missouri Pacific Railroad Company*,
14 | 254 F.3d 825 (9th Cir. 2001) for the proposition that an expert opinion based on speculative
15 | assumption is not reliable.  *Guidroz-Brault* is distinguished from the instant case in that it
16 | involved expert opinions based upon pure speculation with absolutely no factual support in
17 | the record.  *Guidroz-Brault* related to whether or not a train crew should have visualized
18 | possible sabotage to the track which caused a derailment.  In that case there was absolutely
19 | no evidence that there was anything left behind the alleged saboteurs that would have been
20 | visible in any event.  Here the issue goes to <u>weight</u> of the available evidence as opposed to
21 | mere speculation.

F.     **Laxineta's Opinions Relative to Flight Attendant Kane's Failure to
Carefully Handle Items in the Overhead Bin and Placing the Laptop in a
Precarious Position in the Bin do not Usurp the Function of the Trier of
Fact and is Helpful to the Jury.**

25 | Laxineta's final opinions expressed in her deposition are:

- Mr. Kane was observed moving the late-boarding passenger's bag and other
  passenger items around in a full overhead bin by several witnesses.

- Mr. Kane did not carefully handle the items in the overhead bin to make sure

that nothing would fall out.

- Mr. Kane's actions in moving the late-boarding passenger's bag in the overhead bin caused the laptop to be placed in a precarious position in the bin and subsequently fell out.  He therefore caused the accident.

Although defendant attempts to characterize evidence in their favor as "competent testimony" that a passenger was directly involved in the stowage process and that Southwest agents played no roll in the incident, it is undisputed that there are a number of versions of what occurred in this matter.  To that extent, the ongoing discussion relevant to the relative merit of the experts, defendant's and plaintiffs', opinions in this matter go again to the weight of the evidence and not the bases of the opinion.  In her deposition at 67:20 - 69:22, defendant's expert Paula Gaudet states she simply places more weight on the testimony of Jason Gleim, Linda Beattie, and witness Lynette Blumhardt's testimony and chooses to discount the three other percipient witnesses (Johnson, Magnusson, and Ladd's recitation of the events).  (Exhibit "6", Deposition of Gaudet, 67:20 - 69:22)  Here, the expert offers opinions as to assist the jury in determining whether Kane carefully  handled the item in the overhead bin, took appropriate care to make sure nothing would fall out or caused items to be moved into a precarious position.  In, *Mukhtar v. Cal State University, Hayward*, 299 F.3d 1053 (9th  Cir. 2002) the court held that it is well established that expert testimony concerning the ultimate issue is not, per se, improper.  Indeed, Federal Rule of Evidence 704(a) provides that an expert's testimony that is otherwise admissible is not objectionable because it embraces an ultimate issue to be decided by the trier of the fact.

It is interesting to note, at this juncture, that the opinions offered by Southwest's expert, Paula Gaudet, similarly draw conclusions as to ultimate issues.  Namely:

1. Southwest Airlines' personnel complied with airline industry's standard of care with regard to Flight No. 794;

2. Southwest Airlines could not have reasonably prevented the incident that occurred on Flight No. 794.  (See Exhibit "6", Deposition of Gaudet, 34:6 - 16)

Laxineta's testimony is not such that it invades the jury's exclusive function to make

1  credibility determinations.  Here, questioning on the part of Southwest's counsel during her
2  deposition led to interpretation of various witnesses' testimony, but does not necessarily
3  represent an expert merely reciting the allegation of an alleged victim in the guise of a
4  medical opinion. (*United States v. Finley*, 301 F.3d 1000 (9th Cir. 2002), nor an attempt to
5  testify as to a witnesses' credibility or to testify in such a manner as to improperly buttress a
6  witnesses' credibility. (*United States v. Candoli*, 870 F.2d 506)

7  In fact, in her deposition testimony, defendant's witness Gaudet, acknowledges that
8  both of the experts were presented with the same information but simply drew different
9  conclusions.  This is reflected in the Gaudet deposition at 83:4 - 12:

10  Q:    Do you think that Ms. Laxineta was mistaken in relying upon
        the testimony of six or seven witnesses that placed a flight
11      attendant at the accident scene?

12  A:    I think she had apparently access to the same information
        that I had and she drew different conclusions, but maybe she would
13      not be quite as familiar with our procedures and common everyday
        practices as I would be.
14

15  (Exhibit "6", Gaudet's deposition, 83:4 - 12)

16  Laxineta merely relies upon her skill, training, knowledge, and experience to
17  ascertain whether or not the conduct by the flight attendant was proper and safe within the
18  context of the factual situation at the time of the incident.  Certainly, through vigorous cross-
19  examination at trial the defendant can ask questions relating to the weight of the evidence
20  and to the credibility of the witnesses' testimony upon which Gaudet relies.  However, as
21  indicated above, the mere fact that Laxineta states in her deposition (upon directed
22  questioning by defendant's counsel), that she relied on certain witnesses does not mean
23  that she is attempting to substitute her opinion for that of the jury with respect to credibility of
24  those witnesses.

25  **G.    Laxineta's Opinions are not Subject to Exclusion Under Federal Rule of
          Evidence 403.**
26

27  Federal Rule of Evidence 403 provides, in pertinent part that:

28  Although relevant, evidence may be excluded if its probative value
     is substantially outweighed by the danger of unfair prejudice,
     confusion of the issues, or misleading the jury, or by considerations

-19-

1

of undue delay, waste of time, or needless presentation of cumulative evidence.

2  Rule 403 is "an extraordinary remedy to be used sparingly" and "the danger of
3  prejudice must not merely outweigh the probative value of the evidence, but must
4  substantially outweigh it." (*United States v. Mende*, 43 F.3d 1298 (9th Cir. 1995))  The
5  rationale is that exclusion would amount to a total deprivation of the offeror's probative
6  evidence, while admission may be accompanied by redaction, limiting instruction, or other
7  safeguard by which both the objector and the offeror can ordinarily be accommodated.

8  Defendant cites the case of *Jinro America, Inc. v. Secured Investments, Inc.*, 266
9  F.3d 1004 for the proposition that the same is instructive on the issue of circumstances
10  under which otherwise admissible expert testimony should be excluded under F.R.E. 403.
11  Plaintiffs would submit that *Jinro* is such an extreme case (there the expert without any
12  research or study or empirical data made the generalized comment that "generally Korean
13  businessmen were not to be trusted") that there can be no rational application to the instant
14  case.   Defendant attempts to square *Jinro* with this case on two premises, one that
15  Laxineta's opinions are based upon personal experience as a flight attendant almost 30
16  years ago and her impression of a "general trend" of witness recollections about in flight
17  incident. (Defendant's Memorandum of Points and Authorities at 14:13 - 16)  Of course, as
18  previously indicated, defendant's own expert, Paula Gaudet, does not believe that the
19  training has changed significantly for flight attendants with respect to storage of luggage in
20  overhead bins. (Exhibit "6", Gaudet Deposition 11:6 - 15) Moreover, the question of whether
21  or not Laxineta relied on "the general trend of a witnesses' recollections about the in-flight
22  incident" goes not to any prejudice, but merely an observation of the existence of the
23  number of witnesses' testimony with respect to the matter.  Again, the broader issue goes to
24  one of weight of the evidence in the matter.  Therefore, the syllogistic reasoning by
25  defendant that this matter is akin to that in the *Jinro* case is simply not appropriate or
26  instructive in this matter.  Nor is there any analysis by Southwest that the statements made
27  by Laxineta are of the nature of being those which are "likely to carry special weight with the
28  jury".  *Jinro* simply is not a representative case in this matter, nor are the statements of

1 Laxineta of the type of gross generalizations that would be in any unduly or unfairly
2 prejudicial to Southwest.

### H.   The Moving Parties' Contention that Laxineta Should not be Allowed to Testify without her Attempt to Reconstruct the April 2, 2002 Incident is Blown out of Proportion and is an Example of an Unreasonable Analysis in this Matter.

6 During the course of Laxineta's deposition testimony she indicated that, ironically,
7 while flying up from her home in Southern California she flew on a Southwestern flight in
8 order to reach the deposition.  She commented in the deposition that while on the flight she
9 simply observed whether or not she could view or hear any of the passengers talking two
10 rows in front of her.  She clearly indicated in her deposition that she did not attempt to
11 recreate the conditions of the April 2, 2002 incident.  She merely used the term "informal
12 experiment" which has been blown out of proportion and ceased upon by defendant as an
13 informal experiment subject to the instant *Daubert* motion.  (Exhibit "5", Laxineta deposition
14 at 118:9 - 119:12, 120:18 - 121:11, 121:22 -123:7, 120:5 -13).  Plaintiffs do not intend to
15 offer that observation as being the result of any formal "experiment" on her part, nor can a
16 reading of her testimony be fairly construed that this was a formal experiment.  However, an
17 expert may rely on otherwise inadmissible evidence including her experience as a basis for
18 her opinion.

## VI

## CONCLUSION

21 For the foregoing reasons, Southwest's motion and request that the court conduct a
22 *Daubert* hearing on Laxineta's qualifications to determine whether her proffered testimony
23 satisfies the standards set forth in F.R.E. 702, *Daubert*, *Kumho*, and *Jinro* should be denied.
24 Further, Southwest's request that the court enter an order that Laxineta is not qualified to
25 testify in this case and that her opinions do not satisfy the statutory and case law standards
26 for the admissibility of expert testimony should similarly be denied.
27 ///
28 ///

Plaintiffs' Opposition to *Daubert* Motion

Laxineta possess knowledge, skill, experience, and training enabling her to present opinion testimony to the trier of fact.  Her testimony is relevant and admissible in this instant action.   Plaintiffs therefore request that the court deny the relief requested by the moving party.

Respectfully submitted,

DATED:  March 3, 2006                      HELLER & HIBBERT, LLP


_____/s/ Steven M. Heller_____
STEVEN M. HELLER
Attorney for Plaintiffs

**U.S. District Court, Eastern District of California Case No. S-03-1444 FDC PAN**

## PROOF OF SERVICE

I am a citizen of the United States and a resident of Sacramento County.  I am over the age eighteen years and not a party to the within named action; my business address is 6833 Fair Oaks Boulevard, Carmichael, California 95608.

On March 3, 2006, I served the following document(s) on the parties listed below:

**1.     PLAINTIFFS LINDA S. BEATTIE and BRUCE C. BEATTIES' MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT SOUTHWEST AIRLINES' *DAUBERT* MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF PLAINTIFFS' EXPERT, DIANE LAXINETA (FRE 104(a));**

**2.     DECLARATION OF STEVEN M. HELLER IN SUPPORT OF PLAINTIFFS LINDA S. BEATTIE and BRUCE C. BEATTIES' MEMORANDUM OF POINTS & AUTHORITIES IN OPPOSITION TO DEFENDANT SOUTHWEST AIRLINES' *DAUBERT* MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF PLAINTIFFS' EXPERT, DIANE LAXINETA (FRE 104(a));**

**3.     PLAINTIFFS LINDA S. BEATTIE and BRUCE C. BEATTIES' NOTICE OF MANUAL LODGING OF DEPOSITION TRANSCRIPT IN SUPPORT OF PLAINTIFFS' OPPOSITION TO SOUTHWEST AIRLINES' *DAUBERT* MOTION TO EXCLUDE OR LIMIT THE TESTIMONY OF PLAINTIFFS' EXPERT, DIANE LAXINETA (FRE 104(a)).**

  XX   (MAIL) on the parties in this action at the address(es) listed below by placing a copy thereof in a sealed envelope with postage fully prepaid and depositing with the U.S. Postal Service in the designated area for outgoing mail.  I am familiar with the procedures of this office for processing mail.

_____ (PERSONAL DELIVERY) on the parties in this action by causing a true copy thereof to be delivered by hand to the offices of the addressee(s) listed below.

_____ (FACSIMILE)  by sending a true copy thereof by facsimile machine to the persons and at the facsimile numbers listed below.  Receipt of the facsimile sent has been verified.

_____ (OVERNIGHT MAIL) by depositing with an overnight carrier with postage/fees fully prepaid.  I am familiar with the procedures of this office for processing overnight mail.

Elizabeth Dolter
Kenney & Markowitz LLP
255 California Street, Suite 1300
San Francisco, CA 94111
Phone:  (415) 397-3100
Fax:  (415) 397-3170

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.  Executed on March 3, 2006 at Carmichael, California.

_____ /s/ Brenda . Gilbert _____
Brenda L. Gilbert

-23-

Plaintiffs' Opposition to *Daubert* Motion