1  STEPHEN C. KENNEY (SBN 53883)
   ELIZABETH L. DOLTER (SBN 128457)
2  KENNEY & MARKOWITZ L.L.P.
   255 California Street, Suite 1300
3  San Francisco, CA 94111
   Telephone:    (415) 397-3100
4  Facsimile:    (415) 397-3170

5  Attorneys for Defendant
   SOUTHWEST AIRLINES CO.

6

7

8              UNITED STATES DISTRICT COURT

9              EASTERN DISTRICT OF CALIFORNIA

10        SACRAMENTO DIVISION - ECF PROGRAM

11

12  LINDA S. BEATTIE and BRUCE C.        CASE NO.  S-03-1444-FCD-EFB
    BEATTIE,
13                                       **DEFENDANT SOUTHWEST
            Plaintiff,                   AIRLINES CO.'S MOTION IN
14                                       LIMINE NO. 1 RE "OVERSIZED
    v.                                   BAG"**
15
    SOUTHWEST AIRLINES CO., and DOES     **TRIAL DATE:   October 4, 2006**
16  1-100,                               **TIME:          9 a.m.**
                                         **COURTROOM:  2**
17          Defendants.                  **Hon. Frank C. Damrell**

18

19

20                  I.      **INTRODUCTION**

21        At the March 17, 2006, *Daubert* hearing, the Court invited Southwest Airlines Co.

22  ("Southwest") to file an in limine motion on the "oversized bag" issue. (*Daubert* Hearing

    Transcript [Doc. #69] at 66:22-68:18.) Southwest moves to exclude any comment or argument
23
    that an oversized bag was brought on board Southwest Flight 794 on April 2, 2002. The grounds
24
    for this motion are that the phrase "oversized bag" is a term of art in the airline industry which
25
    refers to a bag exceeding the size limitations for carry-on luggage, that there is no evidence that an
26
    oversized bag, i.e., a bag exceeding the carry-on size limitations of 10" x 6" x 24" was brought on
27
    board the flight, and that any reference to an "oversized bag" would be irrelevant speculation
28
    resulting in unfair prejudice to Southwest, jury confusion and a waste of time under FRE 403.

{30170.301680 0124382.DOC}              -1-

Kenney
&
Markowitz
L.L.P.

## II.   **DISCUSSION**

Pursuant to *Erie*, this diversity case will be governed by California tort law on negligence and causation.   Under California law, a negligent act or omission is a cause of injury if it is a "substantial factor" in bringing about the injury.   *Viner v. Sweet* (2003) 30 Cal.4[th] 232, 239.   The substantial factor test subsumes the traditional "but for" test of causation.   *Id.*

It is undisputed that on April 2, 2002, while Southwest Flight 794 was in the process of boarding, a laptop bag fell out of an overhead luggage bin and hit plaintiff Linda Beattie ("Beattie").   How the bag fell and the circumstances leading up to the bag falling are disputed. Plaintiffs' theory of the case is that a "late-boarding" female passenger[1] tried to put her "oversized bag" into the bin above Beattie, that the late-boarder was unable to fit this oversized bag in the bin and it became "stuck," that the late-boarder left her oversized bag protruding from the bin, that Southwest flight attendant Andrew Kane ("Kane") noticed the oversized bag and wanted to check it, and that **a different bag in that bin, a laptop bag**, fell out of the bin when Kane tried to take the oversized bag out of the bin in order to have it checked.   Plaintiffs are floating this "oversized bag" theory to implicate Southwest's gate agents and flight attendants, by claiming that either the gate agents or the flight attendants should have intercepted the oversized bag before it was brought on board the aircraft.   Plaintiffs are also trying to show that Southwest violated Federal Aviation Regulation ("FAR") 121.589 on the stowage of carry-on luggage and Section 5.1 of its Flight Attendant Manual ("Manual").   The FAR and selected sections of the Manual are quoted below in relevant part:

> **121.589 – Carryon Baggage**
>
> (a)   No certificate holder may allow the boarding of carryon baggage on an airplane unless each passenger's baggage has been scanned to control the size and amount carried on board in accordance with an approved carryon baggage program in its operations specifications.   In addition, no passenger may board an airplane if his/her carryon baggage exceeds the baggage allowance prescribed in the carryon baggage program in the certificate holder's operations specifications.
>
> * * *
>
> (Exhibit A.)

---

[1]   Plaintiffs have not disclosed this late-boarding passenger as a witness.

Kenney
&
Markowitz
L.L.P.

**5.1 – Sizing Boxes**

**Sizing boxes measuring 10x16x24 are at each station to help Customers and Employees determine if items can be carried onboard. Items that cannot be contained within the sizing box must be checked to the Customer's final destination. Assistive devices for the disabled are exempt from sizing-box criteria. See 5.3 – Irregularly Shaped Items for other exceptions.**

**5.2 – Carryon Items**

- Carryon items must fit into a sizing box.

- Once onboard, a carryon item must fit under a passenger seat equipped with a restraint bar or in an approved OHB.

- Southwest will not accept any carryon item(s) that cannot be safely stowed in the passenger cabin of the aircraft. No carryon item will be accepted for transport in the cockpit, in a galley, in an aircraft lav or in any other area not specifically designated for the stowage and transport of carryon items.

\* \* \*

**5.2.2 – Approved Carryon Items**

- garment bag

- briefcase

- shopping bag

- computer

- papoose-like baby carrier with hard, non-folding frame

- portfolio, provided a space in the onboard portfolio stowage compartment is available

- unapproved or unticketed CRD (such as a booster seat) which cannot or will not be used during movement on surface, takeoff, or landing

- cooler/Styrofoam cooler

- suitcase (hard and soft)

- camcorder

- trade tools  (Exhibit B; emphasis added.)

**The chief problem with plaintiffs' "oversized bag" theory[2] is that there is no evidence**

---

[2]   Other problems with the oversized bag theory include passenger Lynette Blumhardt's testimony that the laptop bag fell out of the bin when a male passenger opened that bin, and Beattie's April 18, 2002, letter to Southwest where Beattie stated that the bag fell while flight attendant Kane was **walking away** from the bag. (See Blumhardt

Kenney
&
Markowitz
L.L.P.

1   that the alleged late-boarding passenger or any other passenger brought an oversized bag on

2   the aircraft.   Accordingly, there is no evidence that an oversized bag exceeding the size

3   limitations for carry-on luggage was stowed in the overhead bin above Beattie before the laptop

4   bag fell.  Plaintiffs' liability expert Diane Laxineta ("Laxineta") admits that none of the witnesses

5   used the term "oversized" to describe the late-boarder's bag.  (Laxineta Depo. [Exhibit D] at

6   125:14-126:4.)  In the absence of such evidence, plaintiffs should not be allowed to prejudice the

7   jury with this speculative theory.   They should not be allowed to argue or comment that any

8   passenger on Flight 794, including the alleged late-boarding passenger, brought an oversized bag

9   onto the aircraft as a carry-on.

10              **A.     There is No Evidence that an Oversized Bag Was**
               **Placed into the Bin Above Linda Beattie or that**
11              **an Oversized Bag Was Even Carried on the Aircraft**

12              In addition to Beattie, 13 persons who were on Flight 794 were deposed:  ten passenger

13   witnesses and the three Southwest flight attendants.  Beattie and three other passengers recalled

14   that a "late-boarding"[3] passenger placed luggage in the overhead bin above Beattie:  **However,**

15   **none of these witnesses testified that this alleged late-boarder brought a bag on the aircraft**

16   **which exceeded the size limitations for carry-on luggage.**  Jason Gleim did not recall either the

17   size or type of the late-boarder's bag.  Beattie's co-worker Sue Bristow testified that the late-

18   boarder's bag was a "not large" duffel.  The laptop bag's owner Darren Johnson testified that the

19   bag was the same size as his laptop bag.  Beattie testified that it was a "typical bag with an

20   extendable handle."  Below are quotes from Bristow, Beattie and Johnson's depositions on their

21   description of oversized bag:

22

23   Deposition [Exhibit C] at 23:22-24:6 and Amended Pretrial Conference Order [Doc. #63] at 3:7-10.)

24   [3] "Late-boarding" is another term of art in the airline industry.  As Southwest's expert Paula Gaudet, Southwest's
     Director of In-Flight Standards, explained:

25
                    Late boarding would be the doors getting ready to shut or we have closed the
26                  forward entry door and to reopen it for boarding.  Some of these peoples' accounts
                    just seem to be they were sitting down and it happened after they came on and were
27                  seated.  But they were all in the forward part of the cabin which are the seats that
                    people take first.  The flight left on time.  There just isn't a real indication that there
28                  was anything last minute going on from what I reviewed.

                    (Gaudet Depo. [Exhibit E] at 83:13-84:9.)

Kenney
&
Markowitz
L.L.P.

1

Q.   The late-boarding passenger that came on to put this item of luggage in the overhead bin, do you remember what kind of item it was?

2

3

A.   It was a bag, like a clothing bag, **not a large one,** and by that I mean not one of the weekenders that has the handles that most people travel with nowadays.  It seemed like it was more a duffel style.

4

5

(Sue Bristow Depo. [Exhibit F] at 41:2-9.)

6

\* \* \*

7

Q.   Okay.

8

You had a lap top bag that day, correct?

9

A.   Yes.

10

Q.   An in addition to that did you have other carryon luggage?

11

12

A.   No.  That was my only piece of luggage I cared [sic] on the plane.

13

\* \* \*

14

Q.   Do you have any recollection as to whether it [the late-boarding passenger's bag] was – the size of the bag generally speaking?

15

16

**A.   My recollection is about the size of my carryon.**

17

(Darren Johnson Depo. [Exhibit G] at 21:11-17; 60:18-21.)

18

Beattie characterized the alleged late-boarding passenger's bag as a "typical bag with an

19

extendable handle."

20

Q.   Was it [the late-boarding passenger's bag] your typical rolling bag with an extendable handle kind of thing?

21

22

A.   Yeah, but it was really fat and she had a lot of stuff.

23

(Beattie Depo. [Exhibit H] at 61:20-23.)

From these descriptions, it is clear that there is no evidentiary support for a claim that an

24

oversized bag was brought on board the aircraft by a late-boarding passenger and placed into the

25

bin above Linda Beattie.  If plaintiffs are allowed to present this unfounded claim to the jury, there

26

is a danger that the jury will erroneously conclude that Southwest's failure to intercept the

27

oversized bag was a "substantial factor" contributing to the bag's falling on Beattie.

28

///

Kenney
&
Markowitz
L.L.P.

{30170.301680 0124382.DOC}

MOTION IN LIMINE NO. 1
CASE NO. S-03-1444-FCD-EFB

**B.   Southwest Will be Unfairly Prejudiced by Speculation and Innuendo that it Violated a Federal Aviation Regulation and Its Manual by Failing to Intercept an Oversized Bag**

> … prejudice outweighs probative value where the facts arouse the jury's feelings for one side without regard to the probative value of the evidence, or in other words, if the jury is basing its decision on something other than the established facts and legal propositions in the case. E. Cleary, *McCormick on Evidence* § 185 (3d ed. 1984).

(*Bowen v. United States*, 857 F,2d 1337, 1341 (9th Cir. 1988).)

If the jury hears comments about an oversized bag, it may confuse this non-existent oversized bag with the actual laptop bag that fell on Linda Beattie.  A confused jury may believe that the bag which caused the injury was an oversized bag, rather than a conventional laptop bag.

Moreover, if the jury hears pejorative comments or argument that Southwest's gate agents or flight attendants should have done their jobs and intercepted an oversized bag before it was placed in the bin above Linda Beattie (with no evidence to back up those assertions), Southwest would be unfairly prejudiced.  It will be difficult for Southwest to "unring the bell" and erase the erroneous impression that the incident could have been avoided if an oversized bag had been intercepted.  Southwest will also be unfairly prejudiced if the jury hears baseless accusations that Southwest violated FAR 121.589 and Manual Section 5.1.  If the jury were to hear this commentary/argument, it could very likely conclude that Southwest was negligent based solely on speculation and innuendo (1) that its personnel should have intercepted an "oversized bag," and (2) about unproven violations of FAR 121.589 and Section 5.1 of Southwest's Manual.  At best, the oversized bag theory will confuse the jury and lengthen the trial; at worst, it will lead to a tainted verdict based on insufficient evidence.

### III.   CONCLUSION

The jury's verdict should be based on facts, not "but for" speculation about a non-existent oversized bag that played no part in causing injury to plaintiffs.  Once the jury hears about an oversized bag, neither the image of that bag nor the negative light in which it places Southwest can be erased.

Southwest requests an order (1) precluding plaintiffs from discussing, mentioning, referring to, commenting on or introducing evidence that an oversized bag was brought on board

Kenney
&
Markowitz
L.L.P.

{30170.301680 0124382.DOC}                                    -6-
                                        MOTION IN LIMINE NO. 1
                                        CASE NO. S-03-1444-FCD-EFB

1   Flight 794 on April 2, 2002, and (2) precluding plaintiffs from discussing, mentioning, referring

2   to, commenting on or introducing evidence of a violation of FAR 121.589 or Section 5.1 of

3   Southwest's Manual.

4

5   DATED:  September __20__, 2006          KENNEY & MARKOWITZ L.L.P.

6

7                                          By:_____

8                                               STEPHEN C. KENNEY
                                                ELIZABETH L. DOLTER
                                                Attorneys for Defendant
9                                               SOUTHWEST AIRLINES CO.

10                      **DECLARATION OF STEPHEN C. KENNEY**

11           I, Stephen C. Kenney, declare:

12           1.      I am an attorney at law, duly licensed to practice before all the courts of the State of

13   California and before this Court.  I am a Partner with the law offices of Kenney & Markowitz

14   L.L.P., located at 255 California Street, Suite 1300, San Francisco, California, attorneys for

15   defendant Southwest Airlines Co. ("Southwest") in the above mentioned action.

16           2.      The contents of this declaration are true of my own knowledge, and if called as a

17   witness in this action, I could and would competently testify to the matters contained in this

18   declaration.

19           3.      Attached hereto as Exhibit A is a true and correct copy of Federal Aviation

20   Regulation 121.589 contained in Southwest's Flight Attendant Manual.

21           4.      Attached hereto as Exhibit B are true and correct copies of excerpts from Section 5

22   of Southwest Flight Attendant Manual in effect on April 2, 2002, the date of the laptop bag

23   incident.

24           5.      Attached hereto as Exhibit C are true and correct copies of excerpts from the

25   deposition of Lynette Blumhardt taken in this action on January 25, 2005.

26           6.      Attached hereto as Exhibit D are true and correct copies of excerpts from the

27   deposition of Diane Laxineta taken in this action on March 31, 2005.

28

Kenney
&
Markowitz
L.L.P.

1    7.    Attached hereto as Exhibit E are true and correct copies of excerpts from the

2    deposition of Paula Gaudet taken in this action on April 26, 2005.

3    8.    Attached hereto as Exhibit F are true and correct copies of excerpts from the

4    deposition of Sue Bristow taken in this action on January 26, 2005.

5    9.    Attached hereto as Exhibit G are true and correct copies of excerpts from the

6    deposition of Darren Johnson taken in this action on January 24, 2005.

7    10.    Attached hereto as Exhibit H are true and correct copies of excerpts from the

8    deposition of Linda Beattie taken in this action on June 22, 2004.

9    I declare under penalty of perjury under the laws of the United States of America that the

10    foregoing is true and correct and that this declaration is executed this 20th day of September 2006

11    at San Francisco, California.

12

13

14                                                    STEPHEN C. KENNEY

15

16

17

18

19

20

21

22

23

24

25

26

27

28

{30170.301680 0124382.DOC}                        -8-

**F L I G H T   A T T E N D A N T   M A N U A L** 

### 121.587 - Closing and Locking of Flight Crew Compartment Door

(a) Except as provided in paragraph (b) of this section, a pilot in command of an airplane that has a lockable flight crew compartment door in accordance with 121.313 and that is carrying passengers shall ensure that the door separating the flight crew compartment from the passenger compartment is closed and locked during flight.*

(b) The provisions of paragraph (a) of this section do not apply--

    (1) During takeoff and landing if the crew compartment door is the means of access to a required passenger emergency exit or a floor level exit; or,

    (2) At any time that is necessary to provide access to the flight crew or passenger compartment to a crew member in the performance of his duties, or for a person authorized admission to the flight crew compartment under 121.547.**

### 121.589 - Carryon Baggage (Printed in entirety)

(a) No certificate holder may allow the boarding of carryon baggage on an airplane unless each passenger's baggage has been scanned to control the size and amount carried on board in accordance with an approved carryon baggage program in its operations specifications. In addition, no passenger may board an airplane if his/her carryon baggage exceeds the baggage allowance prescribed in the carryon baggage program in the certificate holder's operations specifications.

(b) No certificate holder may allow a passenger entry door of an airplane to be closed in preparation for movement on surface or pushback unless at least one required crew member has verified that each article of baggage is stowed in accordance with this section and 121.285 (c) and (d)

(c) No certificate holder may allow an airplane to takeoff or land unless each article of baggage is stowed:

    (1) In a suitable closet or baggage or cargo stowage compartment placarded for its maximum weight and providing proper restraint for all baggage or cargo stowed within, and in a manner that does not hinder the possible use of any emergency equipment; or

    (2) As provided in 121.285(c) of this part; or

    (3) Under a passenger seat.

(d) Baggage, other than articles of loose clothing, may not be placed in an overhead rack unless that rack is equipped with approved restraining devices or doors.



**FLIGHT ATTENDANT MANUAL**

(e) Each passenger must comply with instructions given by crew members regarding compliance with paragraphs (a),(b),(c),(d), and (g) of this section.

(f) Each passenger seat under which baggage is allowed to be stowed shall be fitted with a means to prevent articles of baggage stowed under it from sliding forward. In addition, each aisle seat shall be fitted with a means to prevent articles of baggage stowed under it from sliding sideward into the aisle under crash impacts severe enough to induce the ultimate inertia forces specified in the emergency landing condition regulations under which the aircraft was type certified.

(g) In addition to the methods of stowage in paragraph (c) of this section, flexible travel canes carried by blind individuals may be stowed - -

  (1) Under any series of connected passenger seats in the same row, if the cane does not protrude into an aisle and if the cane is flat on the floor; or

  (2) Between a non-emergency exit window seat and the fuselage, if the cane is flat on the floor; or

  (3) Beneath any two non-emergency exit window seats, if the cane is flat on the floor; or

  (4) In accordance with any other method approved by the Administrator.

FLIGHT ATTENDANT MANUAL 

## Section 5 - Carryon-Item Policy FAR 121.589

All Customers and Employees may board with one carryon item plus a smaller, personal-type item. Personal items include purses, briefcases, and laptops (including case).

Crewmembers in full uniform may board with their normal complement of items.

### 5.1 - Sizing Boxes

Sizing boxes measuring 10x16x24 are at each station to help Customers and Employees determine if items can be carried onboard. Items that cannot be contained within the sizing box must be checked to the Customer's final destination. Assistive devices for the disabled are exempt from sizing-box criteria. See 5.3 - Irregularly Shaped Items for other exceptions.

### 5.2 - Carryon Items

The following guidelines apply to items carried onboard the aircraft.

- Carryon items must fit into a sizing box.
- Once onboard, a carryon item must fit under a passenger seat equipped with a restraint bar or in an approved OHB.
- Southwest will not accept any carryon item(s) that cannot be safely stowed in the passenger cabin of the aircraft. No carryon item will be accepted for transport in the cockpit, in a galley, in an aircraft lav or in any other area not specifically designated for the stowage and transport of carryon items.

### 5.2.1 - Items Not Counted as Carryon Items

- assistive devices for Customers with qualified disabilities
- outer garments (e.g., overcoats or raincoats)
- approved child restraint devices (CRDs) which have been ticketed or for which complimentary, available space exists
- food-storage containers of working, deadheading, and commuting Crewmembers in uniform

EXHIBIT ℬ

## 5.2.2 - Approved Carryon Items

- garment bag
- briefcase
- shopping bag
- computer
- papoose-like baby carrier with hard, non-folding frame
- portfolio, provided a space in the onboard portfolio stowage compartment is available
- unapproved or unticketed CRD (such as a booster seat) which cannot or will not be used during movement on surface, takeoff, or landing
- cooler/styrofoam cooler
- suitcase (hard and soft)
- camcorder
- trade tools

## 5.3 - Irregularly Shaped Items

Items of reasonable size which protrude from only one side of the sizing box may be permitted onboard if they are not checkable.

- These items count as carryons (unless ticketed) and must fit into an OHB without unfairly depriving other Customers of OHB space.
- Irregularly shaped items can include but are not limited to:
  - musical instruments
  - blueprints
  - umbrellas
  - sports-related equipment (e.g., fishing poles) that can be folded down into a size that fits in the sizing box
  - professional TV cameras or camcorders

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION - ECF PROGRAM


---oOo---


LINDA S. BEATTIE and BRUCE C.

BEATTIE,

        Plaintiffs,

       vs.                No. S-03-1444 FCD PAN

SOUTHWEST AIRLINES CO., and

DOES 1-100,

        Defendants.

_____/

**CERTIFIED COPY**


Deposition of

**LYNETTE BLUMHARDT**

Tuesday, January 25, 2005


Reported by:

**TRACY LEE MOORELAND**

**CSR No. 10397**

**Job No. 9024LR**



Phillips *LEGAL SERVICES*

1430 Alhambra Blvd. Suite 200 • Sacramento, CA 95816
916.455.4200 • 800.455-8030
email: phillips@phillipsdepo.com



EXHIBIT __C__

1   A.        No.

2   Q.        Either to the right or to the left?

3   A.        No.

4   Q.        When you got onto the flight, you didn't

5   recognize anybody else that day, correct?

6   A.        No, I didn't.

7   Q.        Okay.  When you first saw Mrs. Beattie waiting

8   for the flight, did you see whether she was carrying any

9   carry-on with her or anything like that?

10  A.        I don't remember that.

11  Q.        Do you remember the bin space above

12  Mrs. Beattie's head?

13  A.        I don't -- I don't -- what do you mean do I

14  remember the bin space?

15  Q.        Generally speaking before the flight -- well,

16  let me ask you this, you understand that at some point

17  an incident happened on that flight, correct?

18  A.        Uh-huh.  Yes.

19  Q.        Can you describe for me -- I'm sorry.  I cut

20  you off.  That was a yes, correct?

21  A.        Yes.

22  Q.        Can you describe what you understand transpired

23  that day?

24  A.        Another passenger got on the plane and was

25  looking for space to put his carry-on baggage, and he

23

1  opened the overhead bin that was above where Linda was

2  sitting and a laptop computer fell out and hit her on

3  the head.

4  Q.       Okay.  Were any flight attendants in the

5  immediate vicinity when that happened?

6  A.       Not that I recall.

7  Q.       Okay.  Do you recall the flight attendants that

8  were aboard that flight that day?

9  A.       I don't.

10  Q.       No specific recollection?

11  A.       No.

12  Q.       Could you say whether you recall there being

13  three flight attendants or anything?  Strike that.

14         Do you recall how many flight attendants there

15  were?

16  A.       I don't remember.

17  Q.       You couldn't say whether there were male flight

18  attendants, female flight attendants, anything along

19  those lines?  I don't want you to speculate, I just want

20  to see if you remember anyone.

21  A.       I don't.

22  Q.       I want to ask you about this passenger that

23  came over and opened the overhead bin space.  Okay?

24         Do you recall at the point -- first of all, by

25  the time this passenger got on board, had you already

24

# REPORTER'S CERTIFICATE

I certify that the witness in the foregoing deposition,

**LYNETTE BLUMHARDT,**

Was by me duly sworn to testify the truth, the whole truth, in the within-entitled cause; that said deposition was taken at the time and place therein named; that the testimony of said witness was reported by me, a duly certified shorthand reporter and a disinterested person, and was thereafter transcribed into typewriting.

I further certify that I am not of counsel or attorney for either or any of the parties to said cause, nor in any way interested in the outcome of the cause named in said deposition.

IN WITNESS WHEREOF, I have hereunto set my hand this 31st day of January, 2005.


TRACY LEE MOORELAND, CSR 10397
State of California

56

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION

---oOo---

**CERTIFIED
COPY**

LINDA S. BEATTIE and BRUCE C.

BEATTIE,

                    Plaintiff,

        vs.                          No. S-03-1444 FCD

PAN

SOUTHWEST AIRLINES CO., and DOES

1 through 100,

                    Defendants.

_____//

Pages 1 through 163, inclusive.




            DEPOSITION OF DIANE I. LAXINETA

                 March 31, 2005

                    VOLUME I







**U.S. LEGAL**

*Certified Shorthand Reporters*

Reported by

BRIDGET M. MATTOS, CSR No. 11410

180 Montgomery Street, Suite 2180
San Francisco, CA  94104

888-575-3376 • Fax 888-963-3376
www.uslegalsupport.com

EXHIBIT _D_

*Los Angeles • Orange County • San Diego • Inland Empire • Ventura • San Jose • San Francisco • Sacramento . . . and across the nation*

1   attendant placed the laptop computer bag in a

2   precarious position?

3       A.   I don't know.

4       Q.   Okay.  If Sue Bristow testified that she saw

5   the flight attendant put the laptop computer bag on          02:22:08

6   edge to where it's standing upright in the overhead

7   bin, walked away and 30 to 45 seconds later the bag

8   fell out, does that still support -- would that change

9   your opinion?

10      A.   Well, if she testified that there was          02:22:23

11  somebody else that was in the bin afterwards, that

12  could alter my opinion, but I don't believe that was

13  the testimony.

14      Q.   Okay.  Did any of these witnesses testify

15  that the passenger that came on to try and load the          02:22:49

16  bag in the overhead bin, that that bag was actually

17  oversized?

18      A.   Only the passenger witness that I mentioned,

19  Ms. Bristow, and I think I spoke earlier to the fact

20  that she described the bag as one being a folding bag          02:23:07

21  for clothing or whatever, that her description

22  reminded me of my bag which is too big for the

23  overhead.

24      Q.   But she didn't actually use the term

25  oversized bag?          02:23:23

1    A.    I don't believe she did.

2    Q.    Do you know of any other witnesses that did

3  use the term oversized bag?

4    A.    No, I don't.

5    Q.    Your conclusion or opinion that this was an          02:23:28

6  oversized bag is based on the description provided by

7  Sue Bristow?

8    A.    No, it's based on the description by Linda

9  Beattie.

10    Q.    I'm sorry, is it Linda Beattie herself?          02:23:39

11    A.    Linda Beattie described the bag as an

12  oversized bag.  She made the comment that when the

13  late-boarding passenger was coming on, how did she --

14  her thought process was how did she get onboard with a

15  bag that's bigger than mine that I checked.          02:23:55

16    Q.    Okay.  Besides that -- okay.  Earlier I

17  thought you said that you relied on both Bristow and

18  the plaintiff to come to the conclusion that this was

19  an oversized bag?

20    A.    That's correct.          02:24:08

21    Q.    So you do rely in part on Bristow?

22    A.    I do, but it isn't as conclusive as

23  Ms. Beattie's.

24    Q.    I see.  Do you recall there being

25  discrepancies among the witnesses as to the          02:24:23

```
 1    State of California              )

 2    City and County of San Francisco )

 3

 4              I, Bridget M. Mattos, hereby certify that

 5    the witness in the foregoing deposition was by me duly

 6    sworn to testify to the truth, the whole truth and nothing

 7    but the truth in the within entitled cause; that said

 8    deposition was taken at the time and place herein named;

 9    that the deposition is a true record of the witness's

10    testimony as reported to the best of my ability by me, a

11    duly certified shorthand reporter and disinterested

12    person, and was thereafter transcribed under my direction

13    into typewriting by computer; that the witness was given

14    an opportunity to read, correct and sign the deposition.

15              I further certify that I am not interested

16    in the outcome of said action nor connected with or

17    related to any of the parties in said action nor to their

18    respective counsel.

19              IN WITNESS WHEREOF, I have hereunder

20    subscribed my hand on 31st MARCH          , 2005.

21

22    _____
      BRIDGET M. MATTOS, CSR NO. 11410

23

24

25
```

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

---o0o---

LINDA S. BEATTIE and BRUCE C.                    )
BEATTIE,                                         )
                                                 )
            Plaintiffs,                          )
                                                 ) NO. S-03-1444FCD
vs.                                              ) PAN
                                                 )
SOUTHWEST AIRLINES CO., and                      )
DOES 1 through 100, inclusive,                   )
                                                 )
            Defendants.                          )
                                                 )
_____)

CERTIFIED COPY

DEPOSITION OF

PAULA GAUDET

WEDNESDAY, APRIL 26, 2005

NOTICING ATTORNEY:  STEVEN M. HELLER

REPORTED BY:  PAMELA A. EGAN, CSR NO. 2764

**Marcus**
DEPOSITION REPORTING

5½ W. Pine Street, Suite 6   Lodi, CA 95240   Office: 800-682-2323   Fax: (209) 333-1133
e-mail marcusdepo@sbcglobal.net   www.marcusdepo.com

EXHIBIT

1   you mean to include that though.

2           MR. HELLER:  Okay, that's fair.

3           THE WITNESS:  Not that I recall.

4           MR. HELLER:  Q.  Do you think that

5   Ms. Laxineta was mistaken in relying upon the testimony

6   of the six or seven witnesses that placed a flight

7   attendant at the accident scene?

8       A.   I think she had apparently access to the same

9   information that I had and she drew different

10  conclusions, but maybe she would not be quite as

11  familiar with our procedures and common everyday

12  practices as I would be.

13      Q.   Did you ever talk to Andrew Kane about whether

14  he recalled a late boarding passenger on this

15  particular flight?

16      A.   I don't have a specific recollection of

17  talking to him about that, late boarding.  It seems

18  like there might have been, according to some accounts,

19  there was a later boarding.  I don't know that people

20  who have used that term really understand what late

21  boarding is in the airline industry.

22      Q.   How would you describe late boarding in the

23  airline industry?

24      A.   Late boarding would be the door is getting

25  ready to shut or we have closed the forward entry door

                                                      83

1    and had to reopen it for boarding.  Some of these

2    people's accounts just seem to be they were sitting

3    down and it happened after they came on and were

4    seated.

5         But they were all in the forward part of the

6    cabin which are the seats that people take first.  The

7    flight left on time.  There just isn't a real

8    indication that there was anything last minute going on

9    from what I reviewed.

10        Q.   Okay.  Will you tell me, describe for me what

11   Andrew Kane's job description would have required him

12   to do from the time that boarding started until the

13   time that the plane pushed back onto the runway?

14        A.   Duties from -- and of course we can refer --

15   if you want very specific, it's in the manual.  But

16   your flight beginning to end -- in fact, to be more

17   accurate, why don't we just look at that.  It would be

18   tab number three.  And it will be the boarding

19   procedures in your flight from beginning to end.

20        Q.   Okay.

21        A.   Okay.  It's 103, "General Boarding."  So we

22   are going to assume preboards have already taken place

23   and now it's general boarding.  "'A' flight attendant

24   greets customers, screens carry-on items, and assists

25   with stowage when possible."

                                                       84

1    CERTIFICATE OF REPORTER

2         I, PAMELA A. EGAN, a Certified Shorthand

3    Reporter, hereby certify that the witness in the

4    foregoing deposition, PAULA GAUDET, was by me duly

5    sworn to tell the truth, the whole truth and nothing

6    but the truth in the within-entitled cause; that the

7    testimony of said witness was taken down in shorthand

8    by me, a Certified Shorthand Reporter and a

9    disinterested person, at the time and place herein

10   stated, and that the testimony of the said witness was

11   thereafter reduced to typewriting, by computer, under

12   my direction and supervision.

13        I further certify that I am not of counsel or

14   attorney for either or any of the parties to the said

15   deposition, nor in any way interested in the outcome of

16   this cause, and that I am not related to any of the

17   parties thereto.

18        I hereto declare under penalty of perjury that

19   the foregoing is true and correct.  I have hereunto set

20   my hand on May 13, 2005.

21

22                    *Pamela A. Egan*

                      PAMELA A. EGAN, CSR NO. 2764

23

24

25

                                                    105

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

SACRAMENTO DIVISION - **ECF PROGRAM**


---o0o---


LINDA S. BEATTIE and BRUCE C.

BEATTIE,

            Plaintiffs,

      vs.                              No. S-03-1444 FCD PAN

SOUTHWEST AIRLINES CO., and

DOES 1-100,

            Defendants.

**CERTIFIED COPY**

_____/


Deposition of

**SUSAN BRISTOW**

Wednesday, January 26, 2005


Reported by:

**TRACY LEE MOORELAND**

CSR No. 10397

Job No. 9021LR



**Phillips** *LEGAL SERVICES*

1430 Alhambra Blvd. Suite 200 • Sacramento, CA 95816
916.455.4200 • 800.455-8030
email: phillips@phillipsdepo.com

EXHIBIT F

1   A.        Thank you.

2   Q.        Just let me know.

3           The late-boarding passenger that came on to put

4   this item of luggage in the overhead bin, do you

5   remember what kind of item it was?

6   A.        It was a bag, like a clothing bag, not a large

7   one, and by that I mean not one of the weekenders that

8   has the handles that most people travel with nowadays.

9   It seemed like it was more of a duffel style.

10  Q.        Okay.  Now, when she began trying to load that

11  bag, did it seem to you that it wasn't going to fit from

12  what you were observing of the overhead bin space?

13  A.        With as much difficulty as she seemed to be

14  having, it seemed like it wasn't doable.

15  Q.        I'm not sure if I asked you this question.  Did

16  I ask you to describe for me what the late-boarding

17  passenger looked like?

18  A.        You did.  And I've been thinking about that.

19  It seemed like she had dark hair.  I was looking at the

20  back of her.  She had a light colored, I want to say,

21  pants outfit, a jacket and pants, matching color.

22  Q.        Okay.

23  A.        And it seems like she had shoulder to a little

24  bit longer hair.

25  Q.        Do you remember her frame?

                                                        41

REPORTER'S CERTIFICATE


I certify that the witness in the foregoing deposition,

SUSAN BRISTOW,

Was by me duly sworn to testify the truth, the whole truth, in the within-entitled cause; that said deposition was taken at the time and place therein named; that the testimony of said witness was reported by me, a duly certified shorthand reporter and a disinterested person, and was thereafter transcribed into typewriting.

I further certify that I am not of counsel or attorney for either or any of the parties to said cause, nor in any way interested in the outcome of the cause named in said deposition.

IN WITNESS WHEREOF, I have hereunto set my hand this 31st day of January, 2005.



TRACY LEE MOORELAND, CSR 10397
State of California

70

1              UNITED STATES DISTRICT COURT

2              EASTERN DISTRICT OF CALIFORNIA

3           SACRAMENTO DIVISION - ECF PROGRAM

4                    ---oOo---

5   LINDA S. BEATTIE and          )

    BRUCE C. BEATTIE,             )

6                                 )

7           PLAINTIFFS,           )

                                  )

    vs.                           )      No. S-03-1444 FCD PAN

8                                 )

    SOUTHWEST AIRLINES CO.,       )      **CERTIFIED**

9   and DOES 1-100,               )      **COPY**

                                  )

10          DEFENDANTS.           )

    _____)

11

12

13

14

15          DEPOSITION OF DARREN JOHNSON

16          January 24, 2005, at 1:02 p.m.

17          Before:   Annette M. McDonnell, CSR

                      Calif. License 9816

18                    Ill. License 084-003830

19          Taken at the offices of:

20          Al Cala & Associates

            1601 I Street, Suite 410

21          Modesto, California  95354

22          Pursuant to Notice



The original of this transcript will be held in this office for reading and signing by witness until 3-2-05 unless advised differently.

23

24

25



AL CALA & ASSOCIATES
CERTIFIED SHORTHAND REPORTERS

P.O. Box 1930, Modesto, CA 95353  (209) 521-5316
www.alcaladepo.com

EXHIBIT  G

1       the flight number?

2               A.      No.

3               Q.      Okay.

4               A.      I don't recall -- outside of the airline,

5       which was Southwest, and where I sat, which I couldn't

6       of course remember the seat number, I don't remember

7       anything about flight number or departure time, arrival

8       time or anything like that.

9               Q.      Do you fly fairly regularly?

10              A.      No.

11              Q.      Okay.

12                      You had a lap top bag that day, correct?

13              A.      Yes.

14              Q.      And in addition to that did you have other

15      carryon luggage?

16              A.      No.   That was my only piece of luggage I

17      cared on the plane.

18              Q.      I'll ask you a little bit more about the

19      contents of that.

20                      Let's finish on the career development

21      conference.

22                      Do you recall the date that you were

23      flying on Southwest Flight 794?

24              A.      No.

25              Q.      Okay.

1      Q.      You were agitated because this gentleman

2  you're describing was putting a bag in there?

3      A.      Yes.

4      Q.      Okay.  Tell me this, do you recall

5  watching this gentleman come down the aisle?

6      A.      No.

7      Q.      Okay.

8              Do you recall how many bags he had of

9  carryon?

10     A.      No.

11     Q.      Do you recall that he had at least one?

12     A.      Yes.

13     Q.      Is that the item that you're describing he

14  was trying to put in the overhead bin?

15     A.      Yes.

16     Q.      Do you recall what that bag looked like?

17     A.      No.

18     Q.      Do you have any recollection as to whether

19  it was -- the size of the bag generally speaking?

20     A.      My recollection is about the size of my

21  carryon.

22     Q.      Okay.

23     A.      I remember -- I do remember it was, you

24  know, a good size bag.

25     Q.      Before this gentleman tried to put his bag

1   STATE OF CALIFORNIA,        )

2                              )  SS.

3   COUNTY OF STANISLAUS.       )

4               I, ANNETTE M. MCDONNELL, a licensed

5   Certified Shorthand Reporter, duly qualified and

6   certified as such by the State of California and

7   Illinois, do hereby certify:

8               That prior to being examined, the witness

9   named in the foregoing deposition was by me duly sworn

10  to testify to the truth, the whole truth, and nothing

11  but the truth;

12              That the said deposition was by me

13  recorded stenographically at the time and place first

14  herein mentioned, and the foregoing pages constitute a

15  full, true, complete and correct record of the

16  testimony given by the said witness;

17              That I am a disinterested person, not

18  being in any way interested in the outcome of said

19  action, nor connected with, nor related to any of the

20  parties in said action, or to their counsel, in any

21  manner whatsoever.

22          DATED: _____1/24/05_____

23                  _Annette M. McDonnell_

24                  ANNETTE M. MCDONNELL
                    Certified Shorthand Reporter
                    Calif. License No. 9816
25                  Ill. License No. 084-003830

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA
SACRAMENTO DIVISION
---oOo---

LINDA S. BEATTIE and BRUCE

C. BEATTIE,

                        Plaintiff,

        vs.                              No. S-03-1444FCDPAN

SOUTHWEST AIRLINES CO.,

and DOES 1 - 100,

                        Defendants.
_____/

**CERTIFIED COPY**

                    Deposition of

              **LINDA S. BEATTIE**

                  June 22, 2004

Reported by:

SHARON CABELLO, RPR

CSR No. 3080

Job No. 7570LR


Phillips LEGAL SERVICES

1430 Alhambra Blvd. Suite 200 • Sacramento, CA 95816
916.455.4200 • 800.455-8030
email: phillips@phillipsdepo.com

EXHIBIT 

1    We were just kind of having just a neighborhood

2    chitchat, and stuff.

3           And things were going on, and things were

4    going on.  And the flight attendants were going up and

5    down and you could tell that the plane was getting full

6    because a lot of people -- we would constantly have to

7    interrupt our conversation.

8    Q.        Right.

9    A.        And then they were kind of doing their final

10   boarding and this one woman came on very late and she

11   came through the door.  And I know -- I can remember

12   thinking, because I had checked my bag, and her bag was

13   at least as big or bigger than mine.  Wow, how did they

14   let her on board with that bag?  Because it's supposed

15   to fit inside the box or you are supposed to check it.

16          But they were getting late and wanting to get

17   going.  So she did come down.  Again, she was kind of

18   behind me and I heard her trying to shove her big bag

19   into the overhead.

20   Q.        Was it your typical rolling bag with an

21   extendable handle kind of thing?

22   A.        Yeah, but it was really fat and she had a lot

23   of stuff.

24   Q.        Okay.

25   A.        And so she is trying to shove it in, and I can

REPORTER'S CERTIFICATE

     I certify that the witness in the foregoing deposition was by me duly sworn to testify in the within-entitled cause; that said deposition was taken at the time and place therein named; that the testimony of said witness was reported by me, a duly Certified Shorthand Reporter of the State of California authorized to administer oaths and affirmations, and said testimony was thereafter transcribed into typewriting.

     I further certify that I am not of counsel or attorney for either or any of the parties to said deposition, nor in any way interested in the outcome of the cause named in said deposition.

     IN WITNESS WHEREOF, I have hereunto set my hand this 2nd day of July, 2004.


SHARON CABELLO
Certified Shorthand Reporter
State of California
Certificate No. 3080

PHILLIPS LEGAL SERVICES    (916) 455-4200